**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

VLSI TECHNOLOGY LLC,

*Appellant*,

v.

OPENSKY INDUSTRIES, LLC,

*Cross-Appellant*,

INTEL CORPORATION,

*Appellee*.

Nos. 23-2158, 23-2159

**APPELLANT VLSI TECHNOLOGY LLC'S
MOTION TO STAY APPEALS AND FOR A LIMITED REMAND
TO ALLOW CONCLUSION OF ADMINISTRATIVE PROCEEDINGS**

Pursuant to Federal Circuit Rule 27 and Federal Rule of Appellate Procedure 27, appellant VLSI Technology LLC moves to stay these consolidated appeals pending resolution of ongoing sanctions proceedings in the underlying inter partes review. VLSI has discussed this motion with counsel for appellee/cross-appellant OpenSky and appellee Intel Corporation. OpenSky does not oppose a stay and may file a response. Intel opposes a stay and will file a response.

This case arises out of an IPR petition that, as the Director found, was filed as part of an "extort[ion]" scheme in which petitioner OpenSky sought to demand payment from VLSI in exchange for OpenSky sabotaging its own IPR. Paper 102

at 43.[1]  The Director found that OpenSky's misconduct was so outrageous as to "warrant[ ] sanctions to the fullest extent of [her] power."  *Id.* at 4.  But the Director denied VLSI's request that the IPR be dismissed.  Instead, the Director chose to impose monetary sanctions that are still under consideration; briefing remains pending before the Director.  Paper 127 at 16; Paper 130; Paper 131.  In the meantime, the Patent Trial and Appeal Board issued its final written decision in this IPR on May 12, 2023.  *See* Paper 135.  VLSI timely appealed that decision on July 13, 2023.  Paper 139; ECF #1.  As a result, this Court has before it one part of the case.  But the critical issue of sanctions—including the Director's refusal to terminate this IPR—remains before the PTO.

VLSI respectfully moves to stay these appeals, pending final resolution and appeal of the sanctions issues, to promote judicial economy and conserve party resources.  Once the Director's decision on sanctions becomes final and appealable, VLSI intends to seek judicial review of the refusal to terminate the IPR.  The forthcoming sanctions appeal thus could render it unnecessary for the Court to review the final written decision on the merits.  This Court has ordered a stay in similar circumstances.  *See Apple Inc. v. Voip-Pal.com, Inc.*, No. 18-1456, Dkt. 21 (Fed. Cir. order issued Feb. 21, 2018) (granting No. 18-1456, Dkt. 6 at 1 (Fed. Cir.

---

[1] Unless otherwise noted, "Paper" and "Ex." citations refer to filings in the underlying IPR proceeding (IPR2021-01064), while "ECF #__" citations refer to filings on the docket of the lead appeal (Fed. Cir. No. 23-2158).

motion filed Jan. 25, 2018)). The issues in the forthcoming sanctions appeal, moreover, will likely overlap with issues in the current appeals. Allowing a single panel to familiarize itself with the issues and consider them together will be far more efficient than having multiple appeals arising from the same IPR present these issues piecemeal on different tracks.

Finally, to the extent necessary to ensure that the PTO can resolve the outstanding sanctions issues, VLSI requests that the Court grant a limited remand while retaining jurisdiction over these appeals. *See Apple*, No. 18-1456, Dkt. 21 at 2.

## BACKGROUND

## I. OpenSky's Use of Inter Partes Review To Further an Extortion Scheme

### A. OpenSky Is Created To Extort Money by Filing IPRs Against VLSI's Patents

In March 2021, a jury found that Intel infringed two of VLSI's patents—including U.S. Patent No. 7,725,759, the subject of this IPR—and awarded VLSI damages. Paper 47 at 3.

Less than two months later, on April 23, 2021, OpenSky formed as a Nevada limited liability company. Ex. 2006.

Shortly after formation, on June 7, 2021, OpenSky filed two IPR petitions challenging the patents underlying VLSI's verdict against Intel. Paper 2; *OpenSky Indus., LLC v. VLSI Tech. LLC*, IPR2021-01056, Paper 2 (PTAB filed June 7, 2021) (not instituted). OpenSky's petitions were copied largely verbatim from earlier

petitions Intel had filed, which the PTO had declined to institute because of the then-impending district-court trial.[2]  Paper 102 at 7-8 & n.4; Ex. 2024 (comparison of OpenSky and Intel petitions challenging '759 patent); *see Intel Corp. v. VLSI Tech. LLC*, IPR2020-00106, Paper 17 (PTAB filed May 5, 2020) (denying institution of Intel's first petition challenging '759 patent); *Intel Corp. v. VLSI Tech. LLC*, IPR2020-00498, Paper 16 (PTAB filed Aug. 19, 2020) (denying institution of Intel's second petition challenging '759 patent).  By the time OpenSky filed its petitions, Intel was itself time-barred from seeking IPR of the patents.  *See* 35 U.S.C. § 315(b).

As the Director observed, OpenSky was "seemingly created solely for filing" the two petitions.  Paper 102 at 25.  It had no other business activities or purpose.  *Compare* Paper 47 at 8 (ordering OpenSky to respond to interrogatory regarding its business activities and purpose), *with* Paper 102 at 21-22 (the Director noting OpenSky's non-responsive answer to the interrogatory).

### B.    OpenSky Tries To Extort VLSI by Offering To Sabotage Its Own Inter Partes Review in Exchange for Payment

Before the Board issued an institution decision, OpenSky initiated settlement negotiations with VLSI.  Paper 102 at 29-30.  The settlement talks were not successful.

---

[2] At the district-court trial, Intel presented an invalidity defense against the '759 patent, which the jury rejected.  Ex. 1027 at 5 (verdict); Ex. 2110 (judgment).

After institution, OpenSky changed course and reached out to Intel, stating that it sought "monetary payment from Intel in return for success in the IPR." Paper 102 at 30; *see*, *e.g.*, Ex. 1521 (OpenSky requesting a "success fee[]" based on "percentages of the loss avoided by Intel"). OpenSky's offer came with an apparent threat: It "wanted to give Intel another opportunity to consider working with OpenSky *before OpenSky moves in a completely different direction*." Ex. 1521 (emphasis added).

OpenSky's "different direction" was a scheme to *sabotage* its own IPR proceeding in exchange for payment *from VLSI*. At that point, two parties—Intel and an entity called Patent Quality Assurance ("PQA")—had filed joinder requests. As a result, OpenSky could not settle with VLSI in exchange for dismissal; the challenge to VLSI's patents might continue without it. Paper 102 at 31; *see Intel Corp. v. VLSI Tech. LLC*, IPR2022-00366, Paper 4 (PTAB filed Dec. 27, 2021) (Intel's joinder request); *Patent Quality Assurance, LLC v. VLSI Tech. LLC*, IPR2022-00480, Paper 3 (PTAB filed Jan. 24, 2022) (PQA's joinder request). So OpenSky offered VLSI a "well-timed settlement" under which OpenSky would either: (1) terminate the proceeding before the Board ruled on the pending joinder

requests; or (2) if PQA's joinder petition were granted,[3] work to disadvantage the IPR so that VLSI's patent claims would be affirmed.  Ex. 2055.

OpenSky thus proposed that it and VLSI "work together to secure dismissal or defeat of the petition" OpenSky had filed.  Ex. 2055 at 1; *see* Paper 102 at 31-32. OpenSky hatched a plan in which it would refuse to pay its experts so they would not appear for depositions, creating "a potentially fatal evidentiary omission that [a joined party like PQA] would be unable to remedy."  Ex. 2055 at 1.  OpenSky demanded one payment from VLSI upon "execution of agreement" to the plan and another payment after either denial of both joinder petitions or, if joinder were granted, after VLSI's patent claims were "affirmed because of OpenSky's refusal to produce witnesses."  *Id.* at 2.  Upon receiving that egregiously improper proposal, VLSI reported OpenSky's conduct to the Board and ended further settlement discussions.  Paper 102 at 32.

Having failed to extort VLSI, OpenSky again turned its attention to Intel, which (despite OpenSky's prediction) was joined to the IPR underlying these appeals on June 8, 2022.  Paper 43.  OpenSky made "clear that [it] had no interest in meaningfully pursuing the unpatentability grounds in its Petition."  Paper 102 at 33. OpenSky signaled to Intel, for example, that it might decline to depose VLSI's

---

[3] OpenSky asserted that "Intel's joinder petition has no merit" and was "extremely unlikely" to be granted.  Ex. 2055.

expert or to file a reply brief due to "budgetary constraints." Ex. 1524. OpenSky also said it opposed Intel becoming an active participant—*unless* Intel provided "compensation for [OpenSky's] prior work" along with "additional renumeration." *Id.* OpenSky's message was thus clear: It would do what it could to sabotage its IPR unless Intel paid it off. Intel said it would not accept OpenSky's demands for payment. But it propped up OpenSky's IPR, including by providing OpenSky with a deposition outline, a full draft reply brief, and a supporting expert declaration, all for OpenSky to file as its own product. Paper 102 at 34.

## II.    Procedural History

### A.    The Director Finds OpenSky's Abuse of the IPR Process Warrants Sanctions to the Fullest Extent of Her Power—But Then Refuses To Terminate OpenSky's Extortionate IPR

On June 7, 2022, one year after OpenSky filed its petition and about six months after the Board instituted review, the Director ordered *sua sponte* review of the Board's institution decision. Paper 41. One month later, the Director issued an order finding "no error in the Board's decision to institute review" and ordered that "no further briefing is permitted as to the merits of the unpatentability challenges as it pertains to institution." Paper 47 at 6-7. At the same time, the Director ordered further inquiry to determine whether OpenSky had committed an "abuse of process" and, if so, what sanction or remedy should issue as a result. *Id.* at 7-11.

After efforts at discovery and additional briefing, the Director issued an order finding that OpenSky "abused the IPR process by filing this IPR in an attempt to extract payment from VLSI and . . . Intel" and by "offering to undermine and/or not vigorously pursue this matter in exchange for a monetary payment." Paper 102 at 3. Additionally, the Director found OpenSky engaged in discovery misconduct by failing to produce documents as ordered and by failing to respond in good faith to interrogatories. *Id.* at 3, 19-25. The Director found "[e]ach aspect of OpenSky's conduct . . . , taken alone, constitute[d] sanctionable conduct" under 37 C.F.R. § 42.12(a)(6). Paper 102 at 3. "Taken together," the Director stated, "[OpenSky's] behavior warrants sanctions to the fullest extent of [the Director's] power." *Id.* at 3-4.

1.    The Director then considered what sanctions to impose for OpenSky's abuses. Paper 102 at 44-45. First, the Director elevated Intel to "an active party" and "relegat[ed] OpenSky to a silent understudy role." *Id.* at 47. In other words, the Director ruled that OpenSky—which the Director found engaged in misconduct *because* it "had no interest in meaningfully pursuing" this IPR, Paper 102 at 3, 33— would be "sanctioned" by being relieved of meaningful responsibility for pursuing the IPR. Instead, *Intel*—which had unsuccessfully asserted invalidity at the district-court trial and was time-barred from seeking IPR of VLSI's patents itself —would be put in the driver's seat.

Second, the Director considered whether to terminate the proceeding entirely. She acknowledged "that sanction could be the appropriate remedy" for OpenSky's misconduct.  Paper 102 at 47.  She nonetheless declared that the "unique dynamics of this case, coupled with the public interest in evaluating patent challenges with compelling merits, counsel[ed] for a different approach."  *Id.*  She ordered the Board to consider, based on the record prior to institution, whether OpenSky's petition "presents a compelling, meritorious challenge"—meaning one "'in which the evidence, if unrebutted at trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence.'"  *Id.* at 49.

Third, the Director ordered OpenSky to show cause why it should not have to pay compensatory expenses to VLSI as a further sanction.  Paper 102 at 50-51.

2.    VLSI sought reconsideration, which the Director denied.  Paper 106; Paper 114.  Meanwhile, the Board determined that OpenSky's petition presented a "compelling, meritorious challenge" based on the standards set by the Director. Paper 107 at 2-3.  The Director affirmed that conclusion on *sua sponte* review, and on that basis refused to order termination of the IPR as a sanction.  Paper 108; Paper 121 at 9.

In the same order, the Director ordered OpenSky dismissed from the IPR as a sanction for its abuse of process, reconsidering her previous decision to merely assign OpenSky an "understudy" role.  Paper 102 at 47; Paper 121 at 2-3.  But the

Director then reconsidered *that* decision, *restoring* OpenSky as a party to the proceeding—again as a silent understudy to Intel, which continued center stage. Paper 127 at 3.

3. For monetary sanctions, the Director determined that OpenSky must pay VLSI's attorney's fees "for the time spent addressing OpenSky's abusive behavior." Paper 127 at 2. The Director invited VLSI to file a motion for attorney's fees. *Id.* at 16. VLSI filed that motion on February 27, 2023, Paper 130, and OpenSky filed its opposition on March 24, 2023, Paper 131. The motion remains pending.

**B.    VLSI and OpenSky Appeal from the Board's Final Written Decision, While Sanctions Remain Unresolved**

On May 12, 2023, the Board issued a final written decision finding all challenged claims unpatentable. Paper 135. VLSI timely filed a notice of appeal from that decision on July 13, 2023. Paper 139; ECF #1. VLSI seeks review of, among other things, the Board's unpatentability findings; the Board's grant of Intel's joinder request; the Board's denial of a motion to terminate Intel based on claim preclusion; the Board's reliance on hearsay declarations; the Director's unilateral involvement in the first instance rather than only on rehearing, in violation of 35 U.S.C. § 6(c), as modified by *United States v. Arthrex*, 141 S. Ct. 1970 (2021); erroneous claim constructions; the Board's failure to adequately explain its decision; and violations of VLSI's due-process rights.

OpenSky filed a putative notice of appeal on July 14, 2023. Paper 140; No. 23-2159, ECF #1. Although styled as a notice of appeal from the final written decision, it seeks review not of the final written decision *per se*, but instead challenges the Director's sanctions orders, including the Director's findings that "OpenSky abused the IPR process by filing this IPR in an attempt to extract payment from VLSI" and that "OpenSky engaged in abuse of process and unethical conduct by offering to undermine and/or not vigorously pursue this matter in exchange for a monetary payment." Paper 140 at 1-2. As discussed below, however, sanctions proceedings are not yet complete and the sanctions issues remain unresolved. *See* pp. 12-14, *infra*.

On August 2, 2023, this Court consolidated OpenSky's appeal with VLSI's appeal. ECF #2.

## ARGUMENT

This Court has inherent power to stay appeals, including to issue stays pending resolution of related proceedings in the PTO. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A stay is warranted where it furthers judicial economy. *Landis*, 299 U.S. at 254.

Here, the interest in judicial economy is apparent and compelling. In the sanctions proceedings, the Director and Board refused to terminate this IPR as a sanction for OpenSky's egregious abuse of the IPR system—an extortionate scheme

11

that, as the Director found, warranted sanctions to the "fullest extent" of her authority. Paper 102 at 4. But the sanctions issues remain pending before the Director. Those issues, including the refusal to terminate, will not be ripe for appeal until still-unresolved monetary sanctions are quantified. Staying these appeals until the sanctions proceedings are final and appealable would allow all appeals from a single underlying IPR to proceed together before the same panel. Moreover, if the sanctions determinations are reversed on appeal and the IPR is dismissed—or if the Court vacates and requires the Director or Board to reconsider dismissal—that could obviate the need for this Court to reach the merits of VLSI's appeal from the Board's final written decision. At the very least, the sanctions decisions and the final written decision present overlapping issues that are logically considered together.

Recognizing the efficiency benefits of considering all appeals from a single IPR together, this Court has previously stayed appeals from an IPR final written decision where, as here, sanctions proceedings in the IPR are ongoing and an appeal on sanctions issues could moot the appeals from the final written decision. *Apple Inc. v. Voip-Pal.com, Inc.*, No. 18-1456, Dkt. 21 (Fed. Cir. Feb. 21, 2018) (granting stay); No. 18-1456, Dkt. 6 at 1 (stay motion). The same approach is warranted here.

## I.    The Director's and Board's Sanctions Decisions Are Not Yet Appealable

The Court ordinarily has jurisdiction to review *final* PTO sanctions orders issued in inter partes reviews. *See, e.g.*, *Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d

1316, 1322-23 (Fed. Cir. 2020).  But the Court lacks jurisdiction over an "unquanti-fied, and thus non-final," sanctions order.  *Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.*, 905 F.3d 1311, 1315 (Fed. Cir. 2018) (reviewing final written decision but finding no jurisdiction over appeal of non-final sanctions decision), *vacated on other grounds*, 140 S. Ct. 2711 (2020), *on remand*, 825 F. App'x 773 (Fed. Cir. 2020) (same); *cf. Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012) (Court lacks jurisdiction over district-court orders granting sanctions "until the district court has decided the amount of sanctions").

Here, the Director has not yet quantified and thus finalized monetary sanctions against OpenSky.  Paper 127 at 16; Paper 130; Paper 131.  As a result, the Director's and Board's sanctions decisions—including their refusal to terminate the IPR—are not yet appealable.

This Court's decision in *Bennett* makes that clear.  There, the patent owner appealed from a final written decision in which the Board found all challenged claims unpatentable.  905 F.3d at 1313.  The patent owner also attempted to appeal from a sanctions order that declined to terminate the IPR but awarded monetary sanctions.  *Id.* at 1315.  This Court held that it lacked jurisdiction over the appeal of the sanctions order—including the refusal to terminate the IPR—because the Board "ha[d] not yet quantified its sanctions award."  *Id.*; *accord Bennett*, 825 F. App'x at 782.  The Court was unwilling "to arbitrarily divide the Board's sanctions order into

13

two decisions—one relating to termination and one relating to a monetary award." *Bennett*, 905 F.3d at 1316; *accord Bennett*, 825 F. App'x at 783. The refusal to terminate the IPR as a sanction thus was not final and appealable until *all* sanctions issues, including quantification of monetary sanctions, were fully resolved. *See Bennett*, 905 F.3d at 1315; *accord Bennett*, 825 F. App'x at 782.

Likewise here, the Board and Director declined to impose terminating sanctions and instead ordered a lesser monetary sanction that has not yet been quantified. Paper 102 at 47-51; Paper 107 at 2-3; Paper 121 at 9; Paper 127 at 16. The sanctions issues in this case—including whether termination was warranted— are thus not yet appealable. If they are to be considered together with the other issues arising from this IPR, including the final written decision at issue here, the consolidated appeals must be stayed until the Director issues a final decision on sanctions.

## II.    A Stay Is Warranted Because an Appeal of the Sanctions Issues Could Moot VLSI's Appeal and Present Overlapping Issues

Because the sanctions issues are not yet appealable, these appeals should be stayed pending the Director's issuance of a final sanctions order and the filing of associated appeals.

**A.**    Once the sanctions orders are appealable, VLSI will argue that the IPR should have been terminated as a sanction for OpenSky's extortionate abuse of the inter partes review system, and that the Director's lesser "sanction"—relieving

14

OpenSky of responsibility for pursuing an IPR that OpenSky *never intended* to pursue in good faith—fulfills rather than remedies OpenSky's illicit scheme. The sanctions appeal thus could moot the rest of this case, eliminating the need for this Court to decide a host of issues arising from VLSI's appeal of the final written decision, including the Board's obviousness and evidentiary rulings, claim construction issues, the applicability of claim preclusion in IPRs, the propriety of Intel's joinder, due-process issues, and the Director's authority to act unilaterally post-*Arthrex*. *See* p. 10, *supra*. Judicial economy favors a stay until the sanctions orders become final and are appealed, so that all potentially dispositive issues arising from this IPR can be considered together.

This Court has granted stays in similar circumstances. In *Apple v. Voip-Pal.com*, Apple sought a stay of appeals from a final written decision pending the Board's resolution of Apple's motion for sanctions—including termination of the IPR with judgment for Apple—against Voip-Pal.com. No. 18-1456, Dkt. 21 (granting stay); No. 18-1456, Dkt. 6 (motion for stay). Because case-dispositive sanctions were at issue, an appeal from a final sanctions order could have mooted the appeals from the final written decision. This Court accordingly granted a stay pending resolution of the sanctions issues. No. 18-1456, Dkt. 21 at 2.[4] The Court

---

[4] After the Board resolved Apple's sanctions motion, this Court extended the stay, over Voip-Pal.com's objections, until resolution of Apple's rehearing request before the Board. No. 18-1456, Dkt. 24 (Jan. 17, 2019).

lifted the stay once Apple appealed the sanctions issues to this Court; at that point, the sanctions and merits issues were decided together.  No. 18-1456, Dkt. 25 at 1-2, Ex. C (June 7, 2019) (motion to lift stay); No. 18-1456, Dkt. 26 (July 3, 2019) (order lifting stay); *Apple*, 976 F.3d at 1320-26.  A stay pending resolution of the sanctions proceedings is similarly warranted here.[5]

      **B.**    At a minimum, VLSI's sanctions appeal will present issues that are likely to overlap with, or closely relate to, the issues in its current appeal.  For that reason, too, judicial economy favors a stay.  Federal courts have long " 'disfavored piecemeal litigation.' " *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1210 (Fed. Cir. 2018) (remanding to Board to consider all claims in IPR petition instead of hearing immediate appeal on subset of claims); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (recognizing " 'historic federal policy against piecemeal appeals' ").  This Court thus has recognized that, where different issues "in the same case" call for similar analysis, they generally "should

---

[5] Theoretically, the Court could decide an appeal from a final written decision before sanctions are resolved, as might happen absent a stay. *See Bennett*, 905 F.3d at 1315-16; *Bennett*, 825 F. App'x at 783.  But that would disserve judicial economy here—as *Bennett* aptly illustrates.  There, this Court twice reviewed a final written decision before related sanctions issues were resolved, *see Bennett*, 905 F.3d at 1314-16; *Bennett*, 825 F. App'x at 776-83, only for the Board to ultimately de-institute the entire IPR and vacate the final written decision when issuing its final sanctions ruling, *see Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.*, 33 F.4th 1348, 1351-52 (Fed. Cir. 2022).  There is no countervailing consideration that would counsel proceeding piecemeal here.  The appeals were docketed only days ago, the certified list has not been filed, and briefing has not begun.

be appealed together" "in the interests of judicial economy and avoidance of piece-meal litigation." *Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001).

The same considerations are implicated here. When addressing termination of the IPR as a potential sanction, the Director ordered the Board to consider whether, based on the record prior to institution, OpenSky's petition "presents a compelling, meritorious challenge." Paper 102 at 49. That issue overlaps with the primary issue the Board addressed in the final written decision—namely, whether VLSI's claims were shown to be obvious on the grounds identified in the petition. Staying VLSI's appeal until the sanctions issues are ripe for appeal would ensure that only a single panel need familiarize itself with those related questions and can consider them together, promoting judicial efficiency.[6]

Granting a stay until the sanctions issues are resolved will also serve the strong judicial interest in avoiding multiple, piecemeal appeals in a single case. This Court often grants stays of merits appeals where collateral issues in the same case

---

[6] The overlap is not complete: VLSI believes OpenSky's abuses warrant termination of the IPR whether or not OpenSky's petition (which was copied largely verbatim from previously denied petitions) supposedly presented compelling merits. But insofar as the merits are relevant to sanctions, that issue overlaps with the merits issues in VLSI's appeal from the final written decision.

(including attorney's fees and sanctions) remain unresolved in the lower tribunal.[7] No less is warranted here.

**C.**     OpenSky's putative appeal from the Director's sanctions rulings, which the Court consolidated with VLSI's appeal, further militates in favor of a stay.  Paper 140 (docketed as No. 23-2159); ECF #2.  As discussed below, OpenSky's premature notice of appeal may warrant dismissal.  *See* pp. 19-20, 20 n.8, *infra*.  At a minimum, however, OpenSky's effort to appeal sanctions through an appeal of the final written decision reinforces the centrality of the sanctions issues to this IPR and the appropriateness of considering them alongside the merits once sanctions can properly be brought before this Court.

**III.     To the Extent Necessary, the Court Should Order a Limited Remand To Ensure the Agency Can Resolve the Outstanding Sanctions Issues**

When the Court granted a stay in *Apple v. Voip-Pal.com* pending resolution of outstanding sanctions issues, it also ordered a limited remand "[t]o the extent necessary" to ensure the Board retained authority "to consider Apple's sanctions

---

[7] *See, e.g.*, *Orenshteyn v. Citrix Sys., Inc.*, 318 F. App'x 888, 888-89 (Fed. Cir. 2008) (noting that the Court stayed appeal from grant of summary judgment pending resolution of motion for sanctions and attorney's fees in the same case); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 15-1803, Dkt. 26 (Fed. Cir. Oct. 2, 2015) (granting stay of appeal pending resolution of motion for attorney's fees in the same case); *Divix Golf, Inc. v. Mohr*, No. 12-1235, Dkt. 20 (Fed. Cir. June 28, 2012) (similar); *Vehicle Operation Techs., LLC v. BMW of N. Am. LLC*, No. 14-1831, Dkt. 61 (Fed. Cir. Feb. 19, 2015) (granting stay of appeal pending resolution of motions to declare the case exceptional under 35 U.S.C. § 285); *Unified Messaging Sols. LLC v. Google, Inc.*, No. 14-1611, Dkt. 229 (Fed. Cir. Sept. 26, 2014) (same).

motions," while this Court "retain[ed] jurisdiction over the appeals" from the final written decision. No. 18-1456, Dkt. 21 at 2. As the Court recognized, it is not likely that a remand is strictly necessary to ensure that the PTO can resolve the sanctions issues before it. Lower tribunals "typically retain jurisdiction to rule on collateral issues, such as sanctions or attorney's fees, even after they lose jurisdiction over the merits decision." *Dobyns v. United States*, 915 F.3d 733, 738 (Fed. Cir. 2019) (Court of Federal Claims context). Moreover, OpenSky's putative notice of appeal seeking review of the Director's sanctions rulings (Paper 140) is premature. *See Bennett*, 905 F.3d at 1315-16; *Bennett*, 825 F. App'x at 783; pp. 12-14, *supra*. As a result, it is a "nullity" that would not divest the PTO of jurisdiction even over sanctions. *United States v. Rodgers*, 101 F.3d 247, 252 (2d Cir. 1996); *see Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) ("'[T]he jurisdiction of the lower court to proceed in a cause is not lost by the taking of an appeal from an order or judgment which is not appealable.'").

OpenSky suggests that its sanctions appeal is permissible even though sanctions remain unquantified. Paper 140 at 1-2. But OpenSky overlooks *Bennett*'s contrary holding. *See* pp. 13-14, *supra*; *Orenshteyn*, 691 F.3d at 1358. And while OpenSky cites *Carter v. General Motors Corp.*, 983 F.2d 40 (5th Cir. 1993), *Carter* held only that a premature notice of appeal from an unquantified costs award could be given effect *after entry of a final, quantified decision. Id.* at 41-42. Here, no

quantified, final decision has been issued. *Carter*, moreover, no longer appears to be good law even in the Fifth Circuit.[8]

Granting a stay and limited remand, however, could avoid any need to decide the propriety, prematurity, or effect of OpenSky's current appeal. So long as OpenSky files a proper notice of appeal once sanctions are final and appealable, the sanctions issues will be properly before the Court; that sanctions appeal could be heard together with these appeals from the same IPR. A limited remand likewise would avoid any doubt that OpenSky's putative sanctions appeal might raise regarding the PTO's authority to address outstanding sanctions issues in the underlying IPR. Accordingly, VLSI requests that, "[t]o the extent necessary," this case be "remanded for the limited purpose of allowing the Board" and/or the Director to resolve the pending "sanctions" issues. *Apple*, No. 18-1456, Dkt. 21 at 2.

---

[8] The Supreme Court has since held that a premature notice of appeal is valid "only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991). In other words, a premature notice of appeal from a district court's *decision* can be given effect once a *judgment* effectuating that decision is entered. It does not mean that, when a non-final order of some sort is appealed, the entry of a different final judgment somehow revives that premature appeal. As the Fifth Circuit has recognized, the *FirsTier* decision abrogated the authority on which *Carter* relied. *See Carter*, 983 F.2d at 42 (citing *Alcom Elec. Exchange, Inc. v. Burgess*, 849 F.2d 964, 967 (5th Cir. 1988)); *United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998) (*Alcom* "cannot survive" *FirsTier*).

## CONCLUSION

The Court should stay these consolidated appeals pending final resolution of, and the filing of any appeal from, the sanctions issues in the underlying IPR.  To the extent necessary to ensure the PTO can resolve outstanding sanctions issues, the Court should order a limited remand while retaining jurisdiction over the appeals.


August 7, 2023

Respectfully submitted,

*/s/ Jeffrey A. Lamken*

Alan Heinrich
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010 (telephone)
(310) 203-7199 (facsimile)

Babak Redjaian
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
(949) 760-0991 (telephone)
(949) 760-5200 (facsimile)

Jeffrey A. Lamken
  *Counsel of Record*
Lucas M. Walker
Rayiner Hashem
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

Nathan Nobu Lowenstein
Kenneth Weatherwax
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, CA  90405
(310) 307-4500 (telephone)
(310) 307-4509 (facsimile)

*Counsel for Appellant VLSI Technology LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2023-2158, 2023-2159

**Short Case Caption:**  VLSI Technology LLC v. OpenSky Industries, LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  4,900  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/07/2023

Signature:  /s/ Jeffrey A. Lamken

Name:  Jeffrey A. Lamken

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-2158, 2023-2159 |
| **Short Case Caption** | VLSI Technology LLC v. OpenSky Industries, LLC |
| **Filing Party/Entity** | VLSI Technology LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/07/2023

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| VLSI Technology LLC | | CF VLSI Holding LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Bridget Smith<br>Lowenstein & Weatherwax LLP *No longer with firm | Flavio Rose<br>Lowenstein & Weatherwax LLP *No longer with firm | Edward Hsieh<br>Lowenstein & Weatherwax LLP *No longer with firm |
| Parham Hendifar<br>Lowenstein & Weatherwax LLP | Patrick Maloney<br>Lowenstein & Weatherwax LLP *No longer with firm | Jason C. Linger<br>Lowenstein & Weatherwax LLP *No longer with firm |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)    ☐  No    ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |