**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

VLSI TECHNOLOGY LLC,

*Appellant*,

v.

OPENSKY INDUSTRIES, LLC,

*Cross-Appellant*,

INTEL CORPORATION,

*Appellee*.

Nos. 23-2158, 23-2159

**APPELLANT VLSI TECHNOLOGY LLC'S REPLY IN SUPPORT OF ITS
MOTION TO STAY APPEALS AND FOR A LIMITED REMAND
TO ALLOW CONCLUSION OF ADMINISTRATIVE PROCEEDINGS**

The facts supporting a stay of these consolidated IPR appeals are straight-forward. The Director found that OpenSky, the petitioner below, pursued this IPR as part of an "extort[ion]" scheme that "warrant[ed] sanctions to the fullest extent of [her] power." Paper 102 at 4, 43. The Director nonetheless denied VLSI's request to terminate the IPR as a sanction. Instead, she "sanctioned" OpenSky by relieving it of meaningful responsibility for litigating the IPR (responsibility OpenSky never wanted) and by putting Intel in the driver's seat (when Intel was barred from seeking IPR itself). There is no question that, if this Court finds the Director erred in refusing to terminate the IPR, that will obviate the need to review the final written decision on the merits. But no sanctions issues—including the Director's refusal to terminate

the IPR—are currently ripe for appeal, because sanctions issues (quantification of attorney's fees) remain pending before the agency.

The Court thus should do as it did in *Apple Inc. v. Voip-Pal.com, Inc.*, No. 18-1456, Dkt. 21 (Fed. Cir. Feb. 21, 2018), and stay these consolidated appeals until sanctions in the underlying IPR are finally resolved and appealed to this Court. Mot.14-18 (ECF #15). That will allow the Court to consider the final written decision and sanctions issues in this IPR together. Indeed, the Court has already consolidated *OpenSky's* (premature) sanctions appeal with the appeal of the final written decision. While VLSI and OpenSky agree on little else, they agree "the Court should follow the approach employed in *Apple v. VOIP-Pal.com*." OpenSky.Resp.4 (ECF #16).

Intel—part of this case only because it was allowed to hitch its wagon to OpenSky's bad-faith IPR—alone opposes the stay. Intel asserts a stay is unwarranted because the only unresolved sanctions issue is attorney's fees. But the Court lacks jurisdiction over *any* sanctions issues—including the refusal to terminate the IPR—until *all* sanctions issues are resolved, including fees. Intel insists that a refusal to *de-institute* an IPR is unreviewable under 35 U.S.C. § 314(d). But VLSI requested *termination* of the IPR as a *sanction* for OpenSky's (post-institution) misconduct. The denial of that request is plainly reviewable. Intel cannot escape

the obvious: It makes no sense to review this IPR until all issues arising from the IPR, including case-dispositive sanctions, are properly before the Court.

Intel presents a laundry list of grievances, such as the PTAB's denials of its own IPR petitions and the district court's refusal to transfer venue in the infringement litigation. Those (meritless and now-unreviewable) complaints about *other* cases are not properly raised in *these* appeals. Nor do they reflect prejudice from a stay. And Intel's last-ditch suggestion that the Court stay its district-court appeal—which has been fully briefed for months and is scheduled for argument on October 5—is procedurally improper and substantively meritless.

## I.     A Stay Pending a Final Sanctions Order Is Warranted

### A.     A Stay Promotes Judicial Economy

Given OpenSky's unprecedented abuse of the IPR system, sanctions are central to this case. VLSI ultimately seeks termination of the IPR as a sanction for OpenSky's misconduct. Conversely, OpenSky seeks review of the Director's findings of "discovery misconduct," "abuse of process," and "unethical conduct." OpenSky.Resp.2.

The Director has not finally decided all sanctions issues, however, as monetary sanctions remain unquantified. Consequently, *none* of the PTO's sanctions decisions are presently final and appealable—including the refusal to terminate the IPR. Mot.12-14. This Court lacks jurisdiction over an "unquantified, and thus

3

non-final," sanctions order. *Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.*, 905 F.3d 1311, 1315 (Fed. Cir. 2018). In *Bennett*, the denial of terminating sanctions was *not* appealable because the Board "ha[d] not yet quantified" a monetary sanction imposed instead of termination. *Id.* The same is true here.

Once sanctions are finally resolved and appealable, VLSI will argue that the PTO's refusal to terminate was arbitrary, capricious, and wrong. The Court's resolution of that issue—*e.g.*, by finding the agency should have ordered termination, or failed to adequately explain its refusal to do so despite finding OpenSky's abuses warranted sanctions to the fullest extent of the Director's power—could moot VLSI's appeal from the final written decision. Mot.14-16. Nobody contends otherwise. At a minimum, the issues in the forthcoming sanctions appeal will overlap with those in these appeals. *Id.* at 16-18. Judicial economy and "'the historic federal policy against piecemeal appeals'" strongly favor a stay. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

This Court recognized as much in *Apple v. Voip-Pal.com*. Mot.15-16. There, as here, the appellant moved to stay appeals from a final written decision pending final resolution of sanctions proceedings, which included a request to terminate the IPR in the appellant's favor. No. 18-1456, Dkt. 6. The Court granted the stay and, "[t]o the extent necessary," remanded to allow the Board to consider outstanding sanctions issues. No. 18-1456, Dkt. 21 at 2.

4

This case is on all fours. Here, as there, potentially case-dispositive sanctions remain before the PTO and could obviate merits review of the final written decision. Here, as there, it is appropriate to stay these appeals until all issues from this single IPR can be brought before the Court. OpenSky agrees "the Court should follow the approach employed in *Apple v. VOIP-Pal.com*." OpenSky.Resp.4.

### B.    Intel's Objections Fail

Intel nowhere denies that, if this Court overturns the PTO's refusal to terminate the underlying IPR, that would obviate merits review of the final written decision. Nor does Intel deny that sanctions and the merits present overlapping issues. Intel cannot seriously dispute the judicial-economy benefits of the stay. But Intel alone opposes staying these IPR appeals nonetheless.

1.    Intel's primary tactic is misdirection. Repeatedly urging that "the ***only*** sanctions issue that remains pending before the PTO is the Director's quantification of fees awarded to VLSI as a sanction against OpenSky," Intel insists that such a "collateral issue" "does not warrant staying VLSI's . . . appeal" from the final written decision. Opp.11-12 (ECF #17); *accord* Opp.2, 11, 12, 13-14, 15, 20. As the stay motion makes clear, however, VLSI is *not* seeking a stay just so attorney's fees issues can be brought up with the merits. A stay is necessary so that a different, *case-dispositive* sanctions issue—whether the IPR should have been *terminated entirely*—can be considered alongside (indeed, antecedent to) the merits. Mot.1-2,

14-18.  The pending fee determination is relevant because, until monetary sanctions are "quantified," *no* "sanctions" issues—including "termination"—are "final" for appeal purposes.  *Bennett*, 905 F.3d at 1315-16.

Intel's assertion that the "Director's non-termination decision was separate from her decision to award fees and has nothing to do with the pending quantification of fees," Opp.17, is legally and factually erroneous.  Legally, it reprises the attempt "to arbitrarily divide the Board's sanctions order into two decisions—one relating to termination and one relating to a monetary award"—that this Court rejected in *Bennett*, 905 F.3d at 1316.  Factually, Intel ignores that *all* of the sanctions issues arise from the same OpenSky misconduct, and that the Director addressed termination *and* monetary sanctions in the *same* orders.  *See* Paper 114 at 2, 5 (imposing fees as alternative to "other possible sanction[ ]" of "termination"); Paper 102 at 47-51 (refusing termination and ordering OpenSky to show cause why monetary sanctions should not be imposed).  That the Director invited VLSI to formally move for fees after she refused to terminate the IPR, Opp.18, is no different from *Bennett*, where the Board "declined to terminate the IPR as Bennett requested" but "authorized Bennett to move for the 'costs and fees' it had incurred."  905 F.3d at 1314.

2.      Intel cites *protective* language in VLSI's notice of appeal and docketing statement that VLSI seeks review of the refusal to terminate "to the extent the issue is appealable now." Opp.18-19.  But Intel fails to show the issue *is* appealable now.

It is not.  Parties "cannot confer jurisdiction on an appellate court by their agreement or consent."  *Kraft, Inc. v. United States*, 85 F.3d 602, 604 (Fed. Cir. 1996).

3.    Intel's contention that this Court can *never* review the PTO's refusal to terminate, Opp.16-17, requires more misdirection.  Characterizing the decision as a refusal to *de-institute* the IPR, Intel argues that such "institution decisions" are unreviewable under 35 U.S.C. §314(d).  *Id.*  Intel cites no authority holding that this Court cannot review decisions to de-institute (or not de-institute) where that relief is sought *as a sanction* under §316(a)(6).[1]

More important, VLSI did not merely seek de-institution.  It sought *termination* of the (already-instituted) IPR as a sanction for OpenSky's misconduct—including extortionate demands and discovery abuses that *post-dated* institution.  Mot.4-8. "Terminati[on]" is available as a sanction in PTO proceedings, including IPRs.  37 C.F.R. §11.18(c)(5); *see* §42.12(b)(8) ("[j]udgment in the trial or dismissal of the petition").  A decision whether to terminate an IPR as a sanction is not a decision "whether to institute an inter partes review under [§314]," 35 U.S.C. §314(d), and so falls outside §314(d)'s limits on review.

Contrary to Intel's assertions, VLSI expressly sought *termination* as a sanction—as Intel recognized below.  VLSI sought "the strictest sanctions," including

---

[1] *CyWee Group v. Google LLC*, 847 F. App'x 910, 912 (Fed. Cir. 2021) (cited Opp.17), had nothing to do with sanctions; it concerned "'an ordinary dispute about the application of an institution-related statute.'"

"termination."  Paper 84 at 23; *see* Paper 92 at 22 ("Termination falls squarely within the Director's sanction authority.").  Intel acknowledged that VLSI sought "termination as a potential sanction."  Paper 89 at 8.  And the Director addressed "whether to terminate the proceeding" as a "sanction."  Paper 102 at 47; *see* Paper 114 at 5-6 (Director "considered . . . immediate termination").

4.   Intel offers no sound reason for departing from *Apple v. Voip-Pal.com*, where the Court stayed IPR appeals until all issues in the IPR, including a request for termination, could be appealed.  Mot.15-16.  Intel observes that Voip-Pal.com did not oppose Apple's "original" stay request.  Opp.20.  But this Court does not grant stays simply because they are unopposed; judicial economy is what matters. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  Intel also ignores that the Court granted Apple's *second* stay request over Voip-Pal.com's objection. Mot.15 n.4 (citing No. 18-1456, Dkt. 24).  And the fact that Apple moved for sanctions after the final written decision, whereas here the refusal to terminate came before the final written decision, Opp.20, suggests only that a stay here is likely to be shorter than in *Apple*.[2]

---

[2] Intel observes that *Bennett* reviewed a final written decision before sanctions were resolved.  Opp.19.  But no party sought a stay pending resolution of sanctions.  And Intel ignores that the Board ultimately elected to *vacate* the final written decision after this Court reviewed it—twice.  Mot.16 n.5.  *Bennett* illustrates why case-dispositive sanctions should be considered alongside the merits (or before) to avoid wasting judicial resources.

## II.    Intel Will Suffer No Unfair Prejudice

**A.**    Intel asserts unfair prejudice because it is currently appealing a district-court judgment that rests, in part, on the '759 patent (No. 22-1906).  Opp.11-12, 21.  But Intel has already had ample opportunity to challenge the patent's validity.  Intel previously filed IPRs, which were properly denied.  Mot.3-4.  It then unsuccessfully litigated validity in district court—and *chose not to appeal* the jury's validity finding.  *See* Opening Brief in No. 22-1906.  Intel is part of this IPR only because, despite being time-barred and claim-precluded, it was allowed to join OpenSky's extortionate venture.  Mot.6-7; *see* Paper 132.  Intel's desire to exploit OpenSky's misconduct for its own benefit is no ground for claiming unfair prejudice.

**B.**    Regardless, Intel's claim of prejudice is unsubstantiated.  The district-court appeal is fully briefed and scheduled for argument on October 5, 2023.  No. 22-1906, Dkt. 52.  These IPR appeals, by contrast, were just docketed.  Even absent a stay, they likely would not be briefed and argued until ***October 2024*** (assuming a timeline similar to the district-court appeal).[3]  Given that these appeals are a full year behind the district-court appeal, there is no real prospect they could be decided before that case, even without a stay.  Such a remote prospect of (supposed)

---

[3] That estimate is conservative, given the IPR appeals' cross-appeal posture and that the current briefing schedule (ECF #2) does not provide VLSI an opportunity to reply to Intel's brief.

prejudice is no reason to forgo orderly consideration of all issues arising from this IPR.

Intel suggests that the Court *stay Intel's district-court appeal*. Opp.21-22. But Intel never moved for a stay in the district-court appeal, No. 22-1906. Even here, it filed no cross-motion. *See* Fed. R. App. P. 27(a)(3)(B) (party seeking "affirmative relief" in response to motion "must alert the court to the request" in "title of the response"). Any such motion would be baseless. The district-court appeal is already calendared for argument. Once calendared, a "case will not be rescheduled absent a showing of *compelling reason*." Fed. Cir. R. 34(d)(3) (emphasis added). Intel offers no such reason—much less one that justifies delaying an already-calendared case *by a year or more*.[4]

**C.** Intel ignores the effect of its own delays. Intel waited almost seven months into the district-court case to file its (unsuccessful) IPR petitions, which asserted "the same combinations of references" Intel was then asserting in district court. IPR2020-00106, Paper 17 at 10-11 (PTAB May 5, 2020). Given the "advanced stage" of the district-court case, that trial would occur "before the would-be deadline for a final written decision," and "overlap[ping]" validity issues, the PTO exercised its "discretion pursuant to § 314(a)" to defer to the district court's resolution of those issues. *Id.* at 13. That sound (and unreviewable) determination,

---

[4] Neither example Intel cites, Opp.21-22, involved an already-calendared case.

based on Intel's own litigation decisions, is no basis for claiming unfair prejudice now.

Intel quibbles that the district-court trial moved from October 2020 to February 2021 after the PTO denied its IPR petitions. Opp.4. But the trial *still* occurred before the May 2021 deadline for a final written decision in an IPR, as the PTO predicted. IPR2020-00106, Paper 17, at 7-8. Besides, the trial moved because *Intel* sought a three-month continuance, over VLSI's opposition. No. 6:21-cv-57, Dkt. 366 (W.D. Tex. Nov. 30, 2020).

    **D.**    Unhappy with the speedy trial it received, Intel accuses VLSI of "forum shopping." Opp.2, 11. But the district court "squarely reject[ed]" Intel's assertions of "improper 'forum shopping.'" No. 6:21-cv-57, Dkt. 53 at 6 (W.D. Tex. Aug. 6, 2019). The '759 patent was "invented in [the Western] District, by inventors residing in [the] District, while working at companies in [the] District"; Intel has a "major facility" there; and "substantial infringing activities" occurred there. *Id.* at 2, 9-10 & n.3. Intel never sought review of that ruling. It cannot complain about it here.

Deploying passive voice, Intel complains the jury "was not asked" to decide the invalidity grounds raised in Intel's unsuccessful IPR petitions (and this IPR). Opp.4-5. That is because *Intel withdrew* those grounds on the eve of trial—long after the PTO made clear Intel would have to raise all its obviousness defenses in district court. *See* Ex. 2004 ("Intel will not argue at the upcoming trial that . . . the

claims of U.S. Patent No. 7,725,759 . . . are invalid as obvious"). Intel chose to try a different invalidity theory; the jury rejected it; and Intel did not bother raising it on appeal. *See* Ex. 1027; Opening Brief in No. 22-1906. Intel's strategic choice to abandon its obviousness theories in district court—at a time it (apparently) had no reason to expect the PTO would ever consider those theories[5]—is no basis for crying foul here.

## CONCLUSION

VLSI's motion should be granted.

---

[5] OpenSky filed its IPR petition after the verdict. Mot.3.

August 24, 2023                         Respectfully submitted,

                                        */s/ Jeffrey A. Lamken*

Alan Heinrich                           Jeffrey A. Lamken
IRELL & MANELLA LLP                       *Counsel of Record*
1800 Avenue of the Stars, Suite 900     Lucas M. Walker
Los Angeles, CA  90067                  Rayiner Hashem
(310) 277-1010 (telephone)              MOLOLAMKEN LLP
(310) 203-7199 (facsimile)              The Watergate, Suite 500
                                        600 New Hampshire Avenue, N.W.
Babak Redjaian                          Washington, D.C.  20037
IRELL & MANELLA LLP                     (202) 556-2000 (telephone)
840 Newport Center Drive, Suite 400     (202) 556-2001 (facsimile)
Newport Beach, CA  92660                jlamken@mololamken.com
(949) 760-0991 (telephone)
(949) 760-5200 (facsimile)              Nathan Nobu Lowenstein
                                        Kenneth Weatherwax
                                        LOWENSTEIN & WEATHERWAX LLP
                                        1016 Pico Boulevard
                                        Santa Monica, CA  90405
                                        (310) 307-4500 (telephone)
                                        (310) 307-4509 (facsimile)

        *Counsel for Appellant VLSI Technology LLC*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2023-2158, 2023-2159</u>

**Short Case Caption:** <u>VLSI Technology LLC v. OpenSky Industries, LLC</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes <u>2,600</u> words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/24/2023</u>

Signature: <u>/s/ Jeffrey A. Lamken</u>

Name: <u>Jeffrey A. Lamken</u>