Nos. 23-2158, 23-2159

IN THE

# United States Court of Appeals

### FOR THE FEDERAL CIRCUIT

VLSI TECHNOLOGY LLC,
*Appellant*,

V.

OPENSKY INDUSTRIES, LLC,
*Cross-Appellant*,

INTEL CORPORATION,
*Appellee*,

COKE MORGAN STEWART, Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office,
*Intervenor*.

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, No. IPR2021-01064

## RESPONSE AND REPLY BRIEF FOR
## APPELLANT VLSI TECHNOLOGY LLC

Kenneth J. Weatherwax
Nathan Nobu Lowenstein
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, CA 90405
(310) 307-4500

Jeffrey A. Lamken
   *Counsel of Record*
Lucas M. Walker
Rayiner Hashem
Caroline A. Veniero
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000
jlamken@mololamken.com

*Counsel for Appellant VLSI Technology LLC*
*(Additional Counsel Listed on Inside Cover)*

Alan J. Heinrich
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

Babak Redjaian
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
(949) 760-0991

Elizabeth K. Clarke
Thomas P. Schubert
Zakary M. Kadish
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
(312) 450-6700

*Counsel for Appellant VLSI Technology LLC*

# **TABLE OF CONTENTS**

Page

REPLY ARGUMENT ..................................................................................1

I.      The Director's Sanctions Decisions Cannot Be Sustained............................2

        A.      Rescission of the "Compelling-Merits" Memorandum Requires
                Remand........................................................................................2

        B.      The Director's Refusal To Terminate OpenSky's Extortionate
                IPR Was Unreasoned, Arbitrary, and Capricious ................................7

                1.      The Director's Reliance on the "Compelling-Merits"
                        Standard Violated Reasoned Decisionmaking...........................7

                2.      The Refusal To Terminate Disregarded Sanctions
                        Standards...................................................................9

                3.      The Director Deviated from Precedent Without
                        Justification ..............................................................11

        C.      The PTO's "Compelling-Merits" Analysis Improperly Rests on
                Inadmissible Hearsay .........................................................13

        D.      The Director Abused Her Discretion in Denying Any
                Meaningful Sanction ........................................................18

                1.      Demoting, Then Dismissing, Then Reinstating OpenSky
                        Was Arbitrary..............................................................18

                2.      The Hollow Monetary "Sanction" Cannot Excuse the
                        Refusal To Terminate ..................................................20

        E.      Efforts To Evade Review Fail.................................................22

II.     Section 315 Barred Intel's Joinder .................................................25

        A.      Intel's Untimely Petition Was Not "Properly File[d]".....................25

        B.      Intel's Unlawful Joinder Requires Vacatur.................................28

i

III.    The PTAB's Obviousness Determinations Cannot Be Sustained .................30

    A.    The PTAB Misconstrued the "Request" Limitation ..........................30

        1.    The Plain Meaning of "Request" Excludes Commands ..........30

        2.    Prosecution History Does Not Support the PTAB's Construction ...............................................................................33

        3.    The PTAB's Resort to Extrinsic Evidence Was Impermissible ...............................................................................34

        4.    The Obviousness Determination over Schaffer Cannot Stand .................................................................................................34

    B.    The PTAB Made No Findings on Lint ...............................................35

    C.    The PTAB's Motivation-To-Combine Finding for Chen/Terrell Is Unsupported and Unreasoned .........................36

    D.    The PTAB's Determinations Regarding Claims 17, 18, 21, 22, and 24 Are Unreasoned ...................................................................39

CONCLUSION ...........................................................................................................39

RESPONSE TO CROSS-APPEAL ..........................................................................40

COUNTERSTATEMENT OF THE ISSUES ...........................................................41

COUNTERSTATEMENT OF THE CASE ...............................................................41

I.    The Director Orders Discovery into OpenSky's Misconduct .......................41

II.    The Director Finds That OpenSky Flouted Discovery Orders and Pursued This IPR for the Improper Purpose of Extortion .............................42

III.    The Director Orders OpenSky To Pay Limited Attorney's Fees .................43

SUMMARY OF ARGUMENT ..................................................................................44

ARGUMENT .............................................................................................................45

I.    The Director Properly Determined That OpenSky's Misconduct
      Merited Sanctions ......................................................................... 45

      A.    Substantial Evidence Supports the Director's Finding That
            OpenSky Abused the IPR Process and Pursued the IPR for
            Improper Purposes ............................................................. 45

      B.    The Abuse-of-Process Finding Was Within the Director's
            Statutory Authority and Was Not Arbitrary or Capricious ............... 48

      C.    OpenSky Received Notice and Opportunity To Respond ................ 52

II.   The Director Was Authorized To Order Discovery into OpenSky's
      Misconduct ................................................................................... 54

III.  OpenSky Cannot Evade the Director's Modest Fee Award ..................... 58

      A.    The Director Was Authorized To Award a Sanction of
            Attorney's Fees ................................................................. 58

      B.    The Director Found That OpenSky's Misconduct Was the But-
            For Cause of the Fees Awarded ............................................. 62

      C.    *Noerr-Pennington* Does Not Shield OpenSky from the
            Director's Modest Fee Award ............................................... 63

CONCLUSION ........................................................................................ 65

# TABLE OF AUTHORITIES

Page(s)

### CASES

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
  263 F.3d 239 (3d Cir. 2001) ...............................................................64

*Abbott Laboratories v. Brennan*,
  952 F.2d 1346 (Fed. Cir. 1991) ..........................................................64

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ..........................................................37

*Adams Fruit Co. v. Barrett*,
  494 U.S. 638 (1990)............................................................................24

*Allen v. Siebert*,
  552 U.S. 3 (2007)................................................................................25

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975)............................................................................60

*Amneal Pharms. LLC v. Almirall, LLC*,
  960 F.3d 1368 (Fed. Cir. 2020) ..........................................................59

*Apple Inc. v. Voip-Pal.com, Inc.*,
  976 F.3d 1316 (Fed. Cir. 2020) ..........................................................23

*Aqua Prods., Inc. v. Matal*,
  872 F.3d 1290 (Fed. Cir. 2017) ..........................................................10

*Artuz v. Bennett*,
  531 U.S. 4 (2000)................................................................................25

*Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.*,
  33 F.4th 1348 (Fed. Cir. 2022) ...........................................................24

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) ...............................................................64

*Baker Botts L.L.P. v. ASARCO LLC*,
  576 U.S. 121 (2015)............................................................................61

*Barquis v. Merchants Collection Ass'n*,
  496 P.2d 817 (Cal. 1972) ..................................................................51

*BE & K Const. Co. v. NLRB*,
  536 U.S. 516 (2002) ........................................................................64

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015) .......................................................54

*In re Brunetti*,
  __ F.4th __, No. 2023-1539, 2025 WL 2446503
  (Fed. Cir. Aug. 26, 2025) ...................................................................8

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
  498 U.S. 533 (1991) ........................................................................60

*Castillo v. Metro. Life Ins. Co.*,
  970 F.3d 1224 (9th Cir. 2020) .........................................................61

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ..........................................................................61

*Comm'r, INS v. Jean*,
  496 U.S. 154 (1990) ........................................................................61

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) .......................................................64

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .................................................................61, 62

*Cordova v. Univ. Hosp. & Clinics, Inc.*,
  92 F.4th 266 (5th Cir.), *cert. denied sub nom. Mire v. Univ. Hosp.
  & Clinics, Inc.*, 144 S. Ct. 2608 (2024) ...........................................64

*Cuozzo Speed Techs., LLC v. Lee*,
  579 U.S. 261 (2016).........................................................................24

*Dep't of Homeland Security v. Regents of Univ. of California*,
  591 U.S. 1 (2020)......................................................................15, 65

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  847 F. App'x 901 (Fed. Cir. 2021) ...................................................33

v

*Facebook, Inc. v. Windy City Innovations*,
973 F.3d 1321 (Fed. Cir. 2020) ....................................................27, 28

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)........................................................................21

*FDA v. Wages & White Lion Investments, LLC*,
145 S. Ct. 898 (2025)....................................................................28, 30

*Fitbit, Inc. v. Valencell, Inc.*,
964 F.3d 1112 (Fed. Cir. 2020) ..........................................................28

*Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*,
605 F.3d 963 (Fed. Cir. 2010) ..........................................................8, 9

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017)......................................................................61, 63

*Great Concepts, LLC v. Chutter, Inc.*,
90 F.4th 1333 (Fed. Cir. 2024) ...........................................................65

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
452 F.3d 1312 (Fed. Cir. 2006) ..........................................................34

*Hough v. Stockbridge*,
216 P.3d 1077 (Wash. App. 2009) .......................................................51

*Hyatt v. Hirshfeld*,
16 F.4th 855 (Fed. Cir. 2021) .............................................................61

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ......................................................35, 36, 39

*Ignite USA, LLC v. CamelBak Prods., LLC*,
709 F. App'x 1010 (Fed. Cir. 2017) .................................................35, 36

*Indus. Models, Inc. v. SNF, Inc.*,
716 F. App'x 949 (Fed. Cir. 2017) .......................................................64

*Intel Corp. v. Alacritech, Inc.*,
817 F. App'x 1014 (Fed. Cir. 2020) .....................................................35

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    280 F.Supp.3d 691 (D. Md. 2017) ........................................................ 64

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009) ............................................................... 64

*Key Tronic Corp. v. United States*,
    511 U.S. 809 (1994) ............................................................................. 61

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ..................................................... 54, 57

*King v. Fleming*,
    899 F.3d 1140 (10th Cir. 2018) ........................................................... 64

*Linear Tech. Corp. v. ITC*,
    566 F.3d 1049 (Fed. Cir. 2009) ........................................................... 33

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................. 27

*Lorillard v. Pons*,
    434 U.S. 575 (1978) ............................................................................. 60

*Micrografx, LLC v. Google Inc.*,
    672 F. App'x 988 (Fed. Cir. 2016) ...................................................... 34

*Mohammed v. Anderson*,
    833 F. App'x 651 (7th Cir. 2020) ........................................................ 64

*Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................. 7

*NLRB v. Food Store Employees*,
    417 U.S. 1 (1974) ............................................................................. 3, 5

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's
    Laboratories Inc.*,
    923 F.3d 1368 (Fed. Cir. 2019) ........................................................... 49

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ............................................................................. 61

*Pace v. DiGuglielmo*,
 544 U.S. 408 (2005) ...................................................................25, 26

*Paice LLC v. Ford Motor Co.*,
 881 F.3d 894 (Fed. Cir. 2018) ..........................................................35

*Panhandle E. Pipe Line Co. v. FERC*,
 890 F.2d 435 (D.C. Cir. 1989) ....................................................3, 4, 5

*Pers. Web Techs., LLC v. Apple, Inc.*,
 848 F.3d 987 (Fed. Cir. 2017) .......................................................38, 39

*Peter v. Nantkwest, Inc.*,
 589 U.S. 23 (2019) ...........................................................................61

*Poly-Am., L.P. v. API Indus., Inc.*,
 839 F.3d 1131 (Fed. Cir. 2016) .........................................................32

*Pro. Air Traffic Controllers Org. v. FLRA*,
 685 F.2d 547 (D.C. Cir. 1982) ...........................................................57

*Pro. Real Est. Investors, Inc. v. Columbia Pictures Indus.*,
 508 U.S. 49 (1993) ...........................................................................64

*In re Qwest Commc'ns Int'l Inc.*,
 450 F.3d 1179 (10th Cir. 2006) .........................................................58

*Application of Ratti*,
 270 F.2d 810 (C.C.P.A. 1959) ...........................................................36

*Reichhart v. City of New Haven*,
 674 N.E.2d 27 (Ind. App. 1996) ...................................................50, 51

*Royal Canin U.S.A., Inc. v. Wullschleger*,
 604 U.S. 22 (2025) ...........................................................................28

*Russello v. United States*,
 464 U.S. 16 (1983) ...........................................................................26

*SEC v. Chenery Corp.*,
 318 U.S. 80 (1943) .....................................................................*passim*

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ............................................................. 64

*Stiftung v. Renishaw PLC*,
    945 F.2d 1173 (Fed. Cir. 1991) ........................................................ 32

*T.B. Proprietary Corp. v. Sposato Builders, Inc.*,
    No. 94-cv-6745, 1996 WL 674016 (E.D. Pa. Nov. 20, 1996) ........... 51

*Three Lakes Ass'n v. Whiting*,
    255 N.W.2d 686 (Mich. App. 1977) ................................................. 51

*Uniloc 2017 LLC v. Facebook Inc.*,
    989 F.3d 1018 (Fed. Cir. 2021) ........................................................ 23

*Uniloc 2017 LLC v. Sling TV, L.L.C.*,
    No. 23-1156, 2024 WL 4038034 (Fed. Cir. Sep. 4, 2024) ............... 33

*United States v. Arthrex*,
    594 U.S. 1 (2021) .............................................................................. 62

*United States v. Mohammed*,
    89 F.4th 158 (D.C. Cir. 2023) .......................................................... 28

*United States v. Zolin*,
    491 U.S. 554 (1989) .......................................................................... 58

*Univ. of Maryland Biotech. Inst. v. Presens Precision Sensing GmbH*,
    711 F. App'x 1007 (Fed. Cir. 2017) ................................................. 37

*VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*,
    778 F. App'x 897 (Fed. Cir. 2019) ................................................... 29

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .......................................................... 34

*Williston Basin Interstate Pipeline Co. v. FERC*,
    165 F.3d 54 (D.C. Cir. 1999) .............................................................. 3

### STATUTES

5 U.S.C. § 556(d) ...................................................................................... 57

35 U.S.C. § 6(a) (1988) ............................................................................. 60

35 U.S.C. §311(a) ...............................................................................................25

35 U.S.C. §311(c) .........................................................................................25, 26

35 U.S.C. §314(d) ...............................................................................22, 23, 27

35 U.S.C. §315(b) ....................................................................................25, 26, 28

35 U.S.C. §315(c) .........................................................................................25, 27

35 U.S.C. §316(a)(5) ..........................................................................................54

35 U.S.C. §316(a)(6) ...................................................................................*passim*

35 U.S.C. §316(a)(12) ........................................................................................26

## REGULATIONS

24 C.F.R. §5.508(i) ...........................................................................................57

37 C.F.R. §1.616(a)(5) (1988) ..........................................................................60

37 C.F.R. §11.18(b)(2)(i) ............................................................................48, 49

37 C.F.R. §11.18(c)(5) .......................................................................................22

37 C.F.R. §42.2 ..................................................................................................16

37 C.F.R. §42.5(a) .......................................................................................55, 56

37 C.F.R. §42.11 .........................................................................................42, 53

37 C.F.R. §42.11(c) .....................................................................................48, 49

37 C.F.R. §42.11(d) .....................................................................................48, 49

37 C.F.R. §42.12 .........................................................................................59, 61

37 C.F.R. §42.12(a) ............................................................................................55

37 C.F.R. §42.12(a)(7) .................................................................................48, 49

37 C.F.R. §42.12(b)(6) .............................................................................59, 61, 62

37 C.F.R. § 42.12(b)(8) ..................................................................22

37 C.F.R. § 42.20(d) ......................................................................56

37 C.F.R. § 42.51(b)(1) ............................................................55, 56

37 C.F.R. § 42.62 ...........................................................................16

37 C.F.R. § 42.63 ...........................................................................57

37 C.F.R. § 42.64(b)(1) ..................................................................16

## RULES

Fed. R. App. P. 28(e) .....................................................................57

Fed. R. Evid. 801(c) ................................................................13, 14

Fed. R. Evid. 802 ..........................................................................13

Fed. R. Evid. 807(a)(2) ..................................................................17

## AGENCY MATERIALS

*Coalition for Affordable Drugs VI, LLC v. Celgene Corp.*,
    IPR2015-01092, Paper 19 (PTAB Sep. 25, 2015)..............................52

*Guidance on USPTO's Re[s]cission of "Interim Procedure for
    Discretionary Denials in AIA Post-Grant Proceedings with
    Parallel District Court Litigation"* (USPTO Mar. 24, 2025),
    https://www.uspto.gov/sites/default/files/documents/
    guidance_memo_on_interim_procedure_rescission_20250324.pdf ...................6

*IBM Corp. v. Intellectual Ventures II LLC*,
    IPR2014-01465, Paper 32 (PTAB Nov. 6, 2015)........................23, 29

*I.M.L. SLU v. WAG Acquisition, LLC*,
    IPR2016-01656, 2017 WL 6405029 (PTAB Dec. 15, 2017) ...........................56

*I.M.L. SLU v. WAG Acquisition, LLC*,
    IPR2016-01658, Paper 46 (PTAB Feb. 27, 2018)......................11, 12

*Patent Appeal and Interference Practice*,
  60 Fed. Reg. 14488 (Mar. 17, 1995)....................................................60

*Realtek Semiconductor Corp. v. ParkerVision, Inc.*,
  IPR2025-00324/5, Paper 11 (Director June 25, 2025) ......................27

*Samsung Electronics Am., Inc. v. Prisua Engineering Corp.*,
  IPR2017-01188, Paper 22 (PTAB Oct. 11, 2017)..............................15

*USPTO Rescinds Memorandum Addressing Discretionary Denial
  Procedures* (Feb. 28, 2025), https://www.uspto.gov/about-
  us/news-updates/uspto-rescinds-memorandum-addressing-
  discretionary-denial-procedures .................................................1, 3, 5

## LEGISLATIVE MATERIALS

H.R. Rep. No. 110-314 (2007)...................................................................59

154 Cong. Rec. S9988 (daily ed. Sept. 27, 2008)....................................25

## OTHER AUTHORITIES

*Black's Law Dictionary* (9th ed. 2009)....................................................59

Keeton, *Prosser and Keeton on Torts* (5th ed. 1984) ..............................51

Matal, *A Guide to the Legislative History of the America Invents Act:
  Part II of II*, 21 Fed. Cir. Bar J. 539 (2012)........................................59

Restatement (Second) of Torts (1977)......................................................51

Restatement (Third) of Torts (2020)...........................................48, 49, 50

Wright & Miller, *Federal Practice & Procedure* (2d ed. 1994) .............59

Wright & Miller, *Federal Practice & Procedure* (2025 ed.) ...................17

## REPLY ARGUMENT

The PTO fails to answer a simple question: How could the Director find that OpenSky committed egregious misconduct in pursuing this IPR—including abuse of process and *extortion*—yet still allow the IPR to proceed?  Below, the Director invoked the "compelling merits" standard articulated in a June 21, 2022 Memorandum addressing parallel IPR and district-court proceedings.  But the PTO has now *rescinded* and *disavowed* that Memorandum, declaring that any "Director Review decisions rely[ing] on the Memorandum . . . shall not be binding or persuasive on the PTAB."  *USPTO Rescinds Memorandum Addressing Discretionary Denial Procedures* (Feb. 28, 2025) ("Rescission Notice").[1]  And the PTO's brief repeatedly and remarkably insists its current leadership "would not have similarly decided this case."  PTO.Br.22; *see* PTO.Br.29, 31.  The PTO thus asks this Court to uphold a decision resting on authority the agency has abandoned.  That alone warrants remand.

The Director's sanctions decisions cannot stand regardless.  The Director announced that, "per the Memorandum," OpenSky's abuse of process did not matter because its petition purportedly exhibited "compelling merits."  Appx86(n.19).  But no one disputes that the Memorandum says "abuse of process" is reason *to reject* an IPR *despite* "compelling merits."  Appx7370-71, Appx7376.

---

[1] https://www.uspto.gov/about-us/news-updates/uspto-rescinds-memorandum-addressing-discretionary-denial-procedures.

The Director *never mentioned that statement*.  Nor can the PTO deny the decision below inverted it, making compelling merits reason to proceed *despite* abuse of process.

The PTO cannot salvage the Director's other errors either.  The PTO still cannot explain how the empty "sanction" here will deter extortion schemes like OpenSky's.  It virtually abandons the Director's deficient rationales for relying on hearsay.  It cannot justify Intel's improper and prejudicial joinder.  And while the PTO tries to evade judicial scrutiny, sanctions and joinder decisions are reviewable.

Intel alone tries to defend the PTAB's patentability rulings.  Those efforts fail.  The plain meaning of the claimed "request" does not encompass a *command*.  Skilled artisans would not be motivated to combine Chen and Terrell when doing so would undo Chen's basic principle of operation.  And the PTAB's repeated failure to explain its conclusions defies reasoned decisionmaking.

## I.    THE DIRECTOR'S SANCTIONS DECISIONS CANNOT BE SUSTAINED

### A.    Rescission of the "Compelling-Merits" Memorandum Requires Remand

1.    The Director found OpenSky committed extreme misconduct in pursuing this IPR, including "extort[ion]" and "abuse of process."  Appx40-41; Appx80.  She allowed the IPR to proceed nonetheless because of its putative "compelling merits."  Appx84-87(& n.19); Appx119-23.  She drew that "compel-

2

ling-merits" standard from a "June 21, 2022, Director's Memorandum" addressing when IPRs should proceed in light of parallel district-court proceedings. Appx42, Appx86-87(& n.19); *see* Appx7368-76 (Memorandum); VLSI.Br.32-34.

The PTO, however, has now disavowed the Memorandum and its "compelling-merits" standard. On February 28, 2025, the PTO rescinded the Memorandum. Rescission Notice. It further declared that, "[t]o the extent any . . . PTAB or Director Review decisions rely on the Memorandum"—including the decisions under review here—they "shall not be *binding or persuasive* on the PTAB." *Id.* (emphasis added). The PTO thus has disavowed not only *the policy* on which the Director's sanctions decisions relied, but also *the decisions themselves*.

That requires remand. When an agency's "change in policy" implicates a case on appeal, the Court is "required to remand so that the [agency] may indicate how, if at all, its decision would be affected by its intervening policy change." *Panhandle E. Pipe Line Co. v. FERC*, 890 F.2d 435, 438-39 & n.10 (D.C. Cir. 1989) (citing *NLRB v. Food Store Employees*, 417 U.S. 1, 10 & n.10 (1974)); *see also Williston Basin Interstate Pipeline Co. v. FERC*, 165 F.3d 54, 62 (D.C. Cir. 1999). It is hard to imagine a clearer case for remand. The now-rescinded Memorandum was not a mere part of the agency's rationale for its decisions; it was the linchpin. The Director allowed this case to proceed "only" because of the

3

petition's supposed "compelling merits," "per the Memorandum." Appx84, Appx86(n.19); *see* Appx85-86 (Director "[p]redicat[ed]" her decisions wholly "on the application of the compelling-merits standard," "consistent with the Memorandum."). The Director offered no "alternative ground" for refusing termination. *Panhandle*, 890 F.2d at 439. The PTO has now repudiated that Memorandum *and* any decisions relying on it—including the decisions under review. Neither this Court nor agency counsel may "'supply a [different] reasoned basis for the agency's action that the agency itself has not given.'" *Id.* In such circumstances, the Court is "obliged to remand the case for further proceedings" so that the agency can assess how the sanctions decisions "would fare under [the] *new* policy." *Id.* at 438-39.

The policy change undoubtedly could affect the outcome. The PTO *admits* "the current Acting Director"—who rescinded the Memorandum—"would not have similarly decided this case" in light of OpenSky's "serious misconduct." PTO.Br.22; *see* PTO.Br.29, 31. That extraordinary concession cements the need for remand.

2. The PTO is conspicuously quiet about the Memorandum's rescission. "When an agency changes a policy or rule underlying a decision pending review, *the agency* should immediately inform the court and should either move on its own for a remand or explain how its decision can be sustained independently of the

4

policy in question." *Panhandle*, 890 F.2d at 439 (citation omitted, emphasis added). The PTO is aware of that duty; VLSI flagged it in the companion *PQA* appeal. *See* VLSI.Reply-Resp.Br.4-5 in No. 23-2298 (filed Apr. 4, 2025). Yet the PTO did not "immediately inform" this Court of the Memorandum's rescission. *Panhandle*, 890 F.2d at 439. It has not "move[d] on its own for a remand." *Id.* Nor has it tried to explain how the Director's sanctions decisions—which allowed this IPR to proceed "only" because of its supposed "compelling merits," "per the Memorandum," Appx84, Appx86(& n.19)—"can be sustained independently" of that now-rescinded Memorandum, *Panhandle*, 890 F.2d at 439.

Instead, the PTO buries the Rescission Notice in a footnote that addresses *none* of that. PTO.Br.23 n.4. The PTO's silence is especially inexplicable given its history of seeking remand, including where (as here, PTO.Br.22) its current leadership expresses disagreement with an earlier "sanctions determination." *Longhorn Vaccines & Diagnostics, LLC v. Stewart*, No. 23-2111, Dkt. 48 at 2-3 (Fed. Cir. May 14, 2025), *motion granted*, *id.*, Dkt. 49 (May 28, 2025).

3.    The PTO's *brief* asserts, without elaboration, that the Memorandum was rescinded "prospectively." PTO.Br.23 n.4. But the agency itself—not agency counsel or the Court—must "be given the first opportunity to determine whether [a] new policy should be applied retroactively." *Food Store Employees*, 417 U.S. at 10 & n.10. And consistency requires retroactivity here: The Director recognized

5

she was applying *the Memorandum* retroactively when she declined to terminate the IPRs.  Appx85-86(& n.19).  Fairness demands the agency apply the Memorandum's *rescission* retroactively too.

Nor has the agency ruled out retroactivity.  The PTO cites its *Guidance on USPTO's Re[s]cission of "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation"* (USPTO Mar. 24, 2025) (cited PTO.Br.23 n.4).[2]  That guidance was issued by the Chief APJ, not the Acting Director, and concerns institution, not sanctions.  Regardless, it *expressly* recognizes that the rescission *may* be applied retroactively in "extraordinary circumstances."  *Id.* at 2.

The agency plainly could find extraordinary circumstances here.  These cases involve extreme misconduct: abuse of process, defiance of orders, and extortion.  They have attracted unprecedented attention from the public and members of Congress, who have voiced concern about OpenSky's and PQA's "clear abuses of the IPR system."  Appx10956; *see* VLSI.Br.15-16.  The former Director emphasized the "unusual" "circumstances of this particular case."  Appx85.  And the PTO's brief insists the current Acting Director "would not have similarly decided this case."  PTO.Br.22.  The agency readily could conclude those circumstances warrant a fresh look.

---

[2] https://www.uspto.gov/sites/default/files/documents/guidance_memo_on_interim_procedure_recission_20250324.pdf.

6

### B.    The Director's Refusal To Terminate OpenSky's Extortionate IPR Was Unreasoned, Arbitrary, and Capricious

1.    *The Director's Reliance on the "Compelling-Merits" Standard Violated Reasoned Decisionmaking*

Even on its own terms, the Director's invocation of the compelling-merits standard violated reasoned decisionmaking. The PTO says the standard "balances" relevant interests. PTO.Br.29. But the Director never tried to explain why it makes sense to apply the standard for ordinary parallel litigation to cases involving egregious misconduct. That gives zero weight to the manifestly *different* interests—including deterrence and punishment—misconduct cases raise. Disregarding such "an important aspect of the problem" is a textbook APA violation. *Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); VLSI.Br.32-36.

Worse, the Director ignored that *the Memorandum itself* says misconduct warrants different treatment. The Memorandum says "abuse of process" is reason to deny an IPR *despite* "compelling merits." Appx7370-71, 7376. The Director flipped that upside down, declaring that "compelling merits" required proceeding with the IPR *despite* OpenSky's abuse of process. VLSI.Br.34. She did so *without even mentioning* the Memorandum's reference to abuse of process—another clear failure of reasoned decisionmaking. VLSI.Br.34.

The PTO denies the Director "'categorically declare[d] compelling merits a reason to proceed'" despite abuse of process.  PTO.Br.24-25 (quoting VLSI.Br.34) (brackets altered).  But she did just that.  Invoking the Memorandum, she declared that the public interest "*compels* the USPTO to evaluate unpatentability challenges that, at the institution stage, evidence compelling merits."  Appx86 (emphasis added).  The Memorandum, however, says the opposite: "Compelling Merits" do *not* compel the agency to proceed where, as here, "abuse has been demonstrated." Appx7370-71.

The PTO insists the "Director did not formally apply the [ ] Memorandum," but simply "drew on" its compelling-merits standard.  PTO.Br.24.  But the Director purported to "conduct a compelling-merits determination here, *per the Memorandum.*"  Appx86(n.19) (emphasis added).  She declared the IPR would proceed "only if . . . the unpatentability merits were compelling," consistent with the Memorandum.  Appx84.  That decision must be "judged by the standards which the [agency] itself invoked."  *SEC v. Chenery Corp.*, 318 U.S. 80, 89 (1943).  And the Director was required to "provid[e] a reasoned explanation for departing from precedent or treating similar situations differently" regardless. *Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*, 605 F.3d 963, 967 (Fed. Cir. 2010); *see In re Brunetti*, __ F.4th __, No. 23-1539, 2025 WL 2446503, at *7 (Fed. Cir. Aug. 26, 2025).  The Director's failure to follow the standard she invoked—

8

including its declaration that compelling merits do not require proceeding in the face of "abuse of process," Appx7376—is unreasoned and unsustainable, VLSI.Br.34.

The problem in *Fred Beverages* was not lack of a "'stated rule' or 'established practice.'" PTO.Br.24. It was failure to explain a departure from prior decisions *even where* there was no settled rule or practice. 605 F.3d at 966-67. The Director's unexplained departure from *her own stated rule*—the Memorandum she had personally issued and expressly invoked here—is an even more obvious APA violation.

2.    *The Refusal To Terminate Disregarded Sanctions Standards*

The refusal to terminate defied the requirement that sanctions deter and punish. VLSI.Br.34-36. The PTO says no "particular analysis" was required. PTO.Br.28. But the Director pledged sanctions to "punish" and "deter" OpenSky's and similar misconduct. Appx41, Appx81-82, Appx129. Her decision must be "judged by the standards [she] invoked." *Chenery*, 318 U.S. at 89. And like the Director below, the PTO *still* cannot say how the "sanction" here would deter or punish. It goes out of its way to insist "the current Acting Director would not have taken [the same] approach." PTO.Br.29; PTO.Br.22, 31. A promise to do better next time cannot excuse error here.

Allowing a party to pursue an IPR for extortion, violate orders, and stonewall inquiry into its misconduct—*yet still have its IPR proceed*—only encourages misconduct. It sends a clear message that patent owners are better off *capitulating* to extortion efforts than rolling the dice on a subjective "compelling-merits" determination. VLSI.Br.34-36, 43-44. The PTO identifies nothing addressing those glaring problems. It parrots the Director's assertion that her "sanction" would deter. PTO.Br.28-29 (citing Appx84-87). But reasoned decisionmaking requires "reasoning," "not simply provid[ing] a conclusion." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc) (plurality opinion).

No one denies the Director can consider "public interests." PTO.Br.29. But she failed to identify any genuine *public* interest in allowing this abusive IPR to proceed—only Intel's *private* interest in waging repeat challenges to VLSI's patent. VLSI.Br.35-36. Like the Director, the PTO cannot explain why the public interest counsels giving Intel another bite at the apple after its previous IPRs were denied and Intel *abandoned* its district-court obviousness challenge. VLSI.Br.35-36. The PTO's protest that "the AIA places no direct limit on the number of challenges a petitioner can file," PTO.Br.29, underscores how Intel transformed OpenSky's extortive IPR into its own. It overlooks both that the AIA barred Intel from pursuing this IPR and the public interest that bar serves. VLSI.Br.36, 50-53; pp. 25-30, *infra*. And it fails to explain why any relevant public interest could not

10

be served through *legitimate* processes, rather than by countenancing OpenSky's misconduct.  VLSI.Br.35-36.

### 3.    *The Director Deviated from Precedent Without Justification*

a.    The PTO fails to defend the Director's deviation from precedent in allowing this IPR to proceed despite OpenSky's dismissal.  VLSI.Br.36-38.  In *I.M.L. SLU v. WAG Acquisition, LLC*, IPR2016-01658, Paper 46 (PTAB Feb. 27, 2018), the IPR was terminated upon the petitioner's dismissal, despite the presence of a time-barred joined party (like Intel here).  *Id.* at 5 n.8, 16.  VLSI showed that the Director's attempted distinction—that the *I.M.L.* petition was "void *ab initio*," Appx82—was legally erroneous.  VLSI.Br.37.  The PTO offers no response.

The PTO's attempt to distinguish *I.M.L.* on *other* grounds is irrelevant.  *Chenery*, 318 U.S. at 89.  It is also mistaken.  According to the PTO, termination in *I.M.L.* rested on a time bar.  PTO.Br.30.  In fact, it rested on the petitioner's failure to "persuade [the PTAB] that it complied with the statutory requirement to name the real parties-in-interest."  IPR2016-01658, Paper 46 at 14.  As VLSI explained, the Director found OpenSky's discovery misconduct resulted in the same failure— yet she reached the opposite result.  VLSI.Br.37.  The PTO complains "VLSI did not offer evidence" showing an undisclosed real party in interest.  PTO.Br.30.  But the Director did not rule on that basis.  *Chenery*, 318 U.S. at 89.  To the contrary, she found that "OpenSky must have some source of undisclosed funding."

Appx61-62.  Moreover, *I.M.L.* makes clear it is the *petitioner's* burden to show *compliance* with the statute, not the *patentee's* to show *noncompliance*.  OpenSky instead deliberately thwarted inquiry into its backers.  Appx61-62.[3]

That the Director later reinstated OpenSky does not render her departure from *I.M.L.* "moot."  PTO.Br.30.  The reinstatement itself was arbitrary, and had nothing to do with the propriety of allowing the IPR to proceed.  VLSI.Br.44-46; pp. 18-20, *infra*.  If this Court corrects the Director's misapprehension of *I.M.L.*, there is no reason to assume that termination would be refused—*especially* given the PTO's concession that its current leadership "would not have" allowed this IPR to proceed given OpenSky's "serious misconduct."  PTO.Br.22, 29, 31.

b.    No one defends the Director's reliance on inapposite cases in which *legitimately* pursued IPRs continued after the original petitioner *settled*.  VLSI.Br.37-38.  Intel's effort to backfill with *other* cases the Director never cited, Intel.Br.64-65, cannot fill that gap.  *Chenery*, 318 U.S. at 89.  Regardless, those cases *rejected* allegations of misconduct.  They provide no support for allowing an

---

[3] The Director did not rely on Intel's attempted distinctions of *I.M.L.*  Intel.Br.65.  Those distinctions are self-defeating.  The PTAB did *not* grant the *I.M.L.* petitioner's request for adverse judgment against itself, which would have let the IPR continue with the joined party (Duodecad) as sole petitioner; the PTO terminated the IPR *entirely*.  IPR2016-01658, Paper 46 at 12-13, 16.  Nor was there any contention that "the joined party" (Duodecad) was "a real-party-in-interest to the original petitioner" (I.M.L.).  Intel.Br.65.  The real-party-in-interest dispute concerned a non-party (CoolVision).  IPR2016-01658, Paper 46 at 3.  Thus, even assuming Intel was not a real party in interest here (an inquiry OpenSky's stonewalling stymied), that cannot distinguish *I.M.L.*

12

*illegitimately* pursued IPR to continue after finding the petitioner committed misconduct.  VLSI.Br.38.

## C.    The PTO's "Compelling-Merits" Analysis Improperly Rests on Inadmissible Hearsay

The Director declared this IPR should proceed only if, based on the record "*prior to institution*," OpenSky's petition presented "compelling merits."  Appx41-42 (emphasis added); *see* Appx84-87.  There was no basis in the pre-institution record to conclude that OpenSky's petition met that standard.  Before institution, OpenSky had never contacted—much less retained—supposed expert Dr. Jacob.  It copied and refiled Dr. Jacob's expert declarations from Intel's earlier (non-instituted) petitions without his knowledge or consent.  Those declarations were inadmissible hearsay: They were offered for "the truth of the matter asserted," but were "not ma[d]e while testifying at the *current* trial or hearing."  Fed. R. Evid. 801(c), 802 (emphasis added).    Relying on them to establish the supposed "compelling merits" of OpenSky's petition was error.  VLSI.Br.38-43.

1.    The PTO does not meaningfully defend either of the Director's rationales for rejecting that hearsay problem.

a.    The Director asserted that "the Board regularly considers sworn declarations in lieu of live testimony."  Appx122.  But the PTO never disputes that the cases she cited involved declarations prepared *for those cases*.  VLSI.Br.41. The problem with Dr. Jacob's declarations is not that they were *written* testimony,

but that they were testimony *for other cases*.  VLSI.Br.40-41; *see* Fed. R. Evid. 801(c).  The PTO identifies nothing in the Director's decision addressing that problem.

Nor does the PTO deny that the declarants in the Director's cited cases were subject to cross-examination, whereas OpenSky had not even *contacted* Dr. Jacob, much less secured his availability.  VLSI.Br.41-42.  The PTO identifies nowhere the Director addressed that problem.  It asserts forfeiture, PTO.Br.28 n.5, but VLSI argued that OpenSky failed to show it would "produce [Dr. Jacob] for cross-examination" and that "declarations are routinely stricken when declarants are unavailable for cross-examination."  Appx1113-15; *see* Appx1210-11; Appx2706.  The PTO's protest that Dr. Jacob "[u]ltimately" adopted the declarations and was cross-examined, PTO.Br.27; *see* Intel.Br.61, is irrelevant.  The Director limited the compelling-merits inquiry to "the record before the Board *prior* to institution." Appx86 (emphasis added).  She thus could not rely on Dr. Jacob's *post*-institution retention—if she did, that would only underscore the arbitrariness of her decision. VLSI.Br.42.

b.    The Director also invoked the PTAB's statement that OpenSky's contentions were supported "'even without supporting expert testimony.'" Appx122 (quoting Appx98) (emphasis omitted).  As VLSI explained, that statement concerned *only one limitation*.  VLSI.Br.42.  For motivation to combine and

14

expectation of success, the PTAB relied *exclusively* on Dr. Jacob's declarations—and the Director identified nothing else to fill the gap.  VLSI.Br.42-43.  The PTO has no answer.

2.    Unable to defend the Director's actual rationales, the PTO invents new ones.  But "[a]n agency must defend its actions based on the reasons it gave when it acted," not "*post hoc* rationalizations."  *Dep't of Homeland Security v. Regents of Univ. of California*, 591 U.S. 1, 23-24 (2020).  Because the Director's reasons for considering Dr. Jacob's hearsay declarations are unsustainable, remand is required.  *Chenery*, 318 U.S. at 93-95.

The PTO's *post hoc* rationalizations lack merit regardless.  The PTO invokes the PTAB's putative "established practice of relying on hearsay at the institution stage."  PTO.Br.25-28.  The PTO never squares that supposedly "established" practice with *Samsung Electronics America, Inc. v. Prisua Engineering Corp.*, which refused to consider—at the institution stage—a "declaration" that was "not prepared for this proceeding" and thus "hearsay."  IPR2017-01188, Paper 22 at 33 (PTAB Oct. 11, 2017) (cited VLSI.Br.40).

Moreover, *the Director* never invoked that supposed practice, instead citing cases about trials, not institution.  Appx122(n.4).  That is unsurprising: The compelling-merits determination here was *not* an "institution decision."  *Contra* PTO.Br.25-26.  By the Director's own account, the compelling-merits inquiry

applies a "higher standard" that considers whether "'the *evidence*, if unrebutted *at trial*,'" would "'plainly'" lead to an unpatentability determination "'by a preponderance of the *evidence*.'" Appx86 (emphasis added); VLSI.Br.38. That necessarily requires that the "evidence" be *admissible* "at trial."

The asserted justification for deeming hearsay objections "'premature'" at institution is that "a petitioner generally does not receive the opportunity to respond to a patent owner's preliminary response . . . to explain why any evidence would be admissible or cure any issues." PTO.Br.25-26. Here, OpenSky requested—and received—a pre-institution reply to VLSI's "arguments regarding hearsay." Appx1162-63 (granting request); *see* Appx1113-15 (VLSI objection); Appx1181-84 (OpenSky reply). OpenSky still failed to cure the defect: Dr. Jacob still had not been retained and the declarations were still not prepared for *this* proceeding. Nor do PTO regulations excuse the hearsay problem. They provide that the Federal Rules of Evidence apply *throughout* an IPR "proceeding." 37 C.F.R. §42.62; *see id.* §42.2. Section 42.64(b)(1) (cited PTO.Br.25, 28) merely sets a *deadline* for raising evidentiary objections.

The PTO invokes "the Board's institution stage decision on VLSI's hearsay objection." PTO.Br.26-27. But *the Director* did not. In affirming the compelling-merits determination, the Director cited portions of the PTAB's "Institution Decision," Appx119 (citing Appx1217-18, Appx1236-43), but *not* its hearsay

16

discussion, Appx1219-21.  Unsurprisingly.  The Institution Decision rested on *supposition* that Dr. Jacob would appear, adopt his prior statements, and be cross-examined—despite OpenSky's failure to even *contact* him.  Appx1219-21.  Perhaps such supposition could satisfy the "reasonable likelihood" standard applicable to institution (a question this Court need not decide).  35 U.S.C. §314(a).  But it cannot satisfy the "higher standard" applicable to the compelling-merits determination, which requires "'evidence'" admissible "'at trial.'"  Appx86; pp. 15-16, *supra*.  As the "proponent" of Dr. Jacob's declarations, OpenSky had the "'burden'" to establish their admissibility at trial "by a preponderance of the evidence."  30B Wright & Miller, *Federal Practice & Procedure* §6803 (2025 ed.).  OpenSky offered *no* such evidence, conceding it had not even *contacted* Dr. Jacob.  Appx1182.[4]

3.    Intel's additional arguments fare no better.  The Director did not invoke the residual hearsay exception, so Intel cannot on appeal.  *Chenery*, 318 U.S. at 89.  Intel also overlooks that exception's demanding requirements, including that Dr. Jacob's hearsay declarations be "more probative" than "*any other evidence*" OpenSky *could have* "*obtain[ed] through reasonable efforts*."  Fed. R. Evid. 807(a)(2) (emphasis added); *see* 30B Wright & Miller §7067.  That standard

---

[4] The PTO's suggestion that "VLSI" had to show "Dr. Jacob would be unwilling to testify," PTO.Br.26, is improper burden-shifting.

cannot be met: OpenSky could have retained Dr. Jacob or another expert *pre*-institution.

Intel's suggestion that the hearsay error was "harmless" because Dr. Jacob adopted the declarations and was cross-examined *post*-institution, Intel.Br.61-63, ignores that the compelling-merits inquiry was limited to the record "prior to institution," Appx86. Even if later developments allowed consideration of the declarations in *the final written decision*, that would not erase the prejudice of erroneously considering them in *the compelling-merits sanctions inquiry*. That inquiry plainly could have turned out differently—resulting in termination of this IPR—had Dr. Jacob's hearsay declarations not been considered. VLSI.Br.43.[5]

### D.  The Director Abused Her Discretion in Denying Any Meaningful Sanction

The "sanctions" the Director imposed—demoting, then dismissing, then reinstating OpenSky, and ultimately imposing a toothless fee award—underscore the lack of reasoned decisionmaking.

#### 1.  *Demoting, Then Dismissing, Then Reinstating OpenSky Was Arbitrary*

The Director demoted OpenSky to "silent understudy," then dismissed it entirely, then reinstated it, all within five months. Appx84, Appx116-17, Appx128. Those vacillations do not remotely approach a sustainable exercise of

---

[5] Intel's suggestion that the hearsay issue is unreviewable, Intel.Br.57-58, is meritless. The issue concerns sanctions, not institution. *See* pp. 22-24, *infra*.

discretion.  VLSI.Br.44-46.  The PTO hardly argues otherwise—indeed, it urges that "the current Acting Director would not have taken this approach."  PTO.Br.31.

The Director faulted OpenSky for conducting this proceeding despite "not intend[ing] to pursue the patentability merits."  Appx78.  She nonetheless purported to "sanction" OpenSky's by *relieving* it of responsibility for pursuing the merits.  Appx84.  The Director never reconciled that contradiction.  VLSI.Br.44.  Nor does the PTO.  The PTO insists OpenSky's "true goal" was extortion.  PTO.Br.31.  Extortion certainly was *one* of OpenSky's goals.  But the PTO ignores the Director's finding that OpenSky *also* sought to shift litigation burdens onto Intel.  Appx70-71, Appx78-79.  The Director's "sanction" facilitated rather than punished that abuse.  VLSI.Br.44.

The Director insisted OpenSky's demotion was "indeed a sanction" because it removed OpenSky's "leverage."  Appx108.  But the PTO does not deny that, by then, "OpenSky had no leverage to exploit."  PTO.Br.31-32; *see* VLSI.Br.45.  While the PTO asserts that barring OpenSky's participation was "permissible," PTO.Br.31, it never argues doing so was *a meaningful sanction*.

Nor can the PTO salvage OpenSky's arbitrary dismissal-then-reinstatement.  VLSI.Br.45-46.  The PTO admits the Director reinstated OpenSky solely because PQA, the petitioner in a different IPR, had argued that its dismissal immunized it from further sanctions.  PTO.Br.32.  But the PTO does not deny that PQA's

19

objection was frivolous—nor that, whatever the objection's merits, *OpenSky* never made it.    VLSI.Br.45-46.    The PTO cannot explain how surrendering to a frivolous, unraised objection reflects reasoned decisionmaking.

   2.    *The Hollow Monetary "Sanction" Cannot Excuse the Refusal To Terminate*

The PTO and VLSI agree the Director properly ordered OpenSky to compensate VLSI for attorney's fees incurred because of OpenSky's misconduct. VLSI.Br.47.    The problem is that imposing only that monetary "sanction"—*while still allowing the abusive IPR to proceed*—was meaningless as punishment or deterrence.    As the Director herself found, OpenSky was "created solely for filing this IPR," never revealed what "other entities" are behind it, "flouted" orders, and pleaded "it was running out of money."    Appx61-62, Appx75, Appx78.    Given *her own findings*, the Director had no basis to conclude her fee order carried any sting—or that OpenSky, having defied prior orders, would honor this one. VLSI.Br.46-47.

Like the Director, the PTO cannot explain how the "sanction" here will deter "other parties contemplating similar misconduct."    PTO.Br.35.    While OpenSky failed to achieve its goals, that was because VLSI chose to report rather than pay OpenSky's ransom demands.    Appx69; *see* Appx11010-12.    But the abusive IPR continued.    It will not be lost on aspiring extortionists that, the *next* time someone creates a "shell" entity "on the heels of a large jury verdict" to "extort money"

20

from a patent owner, Appx61-62, Appx75, Appx80, the patent owner will have every incentive to pay up.  The Director never addressed that glaring problem.

Attempting a "gotcha," the PTO urges VLSI "should not now be heard to complain" about deterrence because it argued below that a fee award was "'necessary to deter future misconduct.'"  PTO.Br.34-35 (quoting Appx2799).  But VLSI was clear that "anything short of termination" would only "motivate future opportunistic petitions to strategically file abusive 'lottery-ticket petitions.'"  Appx1790; *see* Appx2152-55; Appx2626-27(& n.2).  Per the Director's instructions, the filing the PTO cites focused on "whether 'compensatory expenses, including attorneys' fees,' should be awarded."  Appx2795 (quoting Appx87-88).  But it, too, maintained that "termination of these proceedings is warranted."  Appx2809.  In arguing a fee award was "necessary," VLSI never suggested it was *sufficient*.[6]

The PTO implicitly concedes the Director never addressed whether—given OpenSky's defiance of prior orders and pleas of poverty—OpenSky would actually pay.  VLSI.Br.46.  While the PTO asserts forfeiture, the Director *herself* found that OpenSky "flouted" orders and professed it "lacked . . . resources."  Appx75, Appx78.  She could not simply disregard her own findings.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 537-38 (2009).  The PTO now would disbelieve

---

[6] The PTO also overlooks that VLSI (unsuccessfully) sought fees against OpenSky's attorneys because "OpenSky has no legitimate business or reputation to protect."  Appx2790-91, Appx2803-09, Appx140.

OpenSky's penury plea, PTO.Br.34, but the Director considered it "at face value," Appx78.   And the PTO concedes OpenSky flouted the Director's orders, PTO.Br.10-11; *see* PTO.Br.22—giving every reason to think it would defy her fee order, too.

### E.   Efforts To Evade Review Fail

The PTO and Intel urge that §314(d) bars review.   Intel.Br.52-53; PTO.Br.18-20.   But §314(d) addresses *institution*; VLSI's appeal challenges the denial of meaningful *sanctions* for OpenSky's misconduct, including the refusal to terminate the IPR.   VLSI.Br.47-49.

The PTO and Intel conflate *terminating the IPR as a sanction* with *vacating an institution decision*.   The Director's decision recognized the distinction.   When launching her inquiry into OpenSky's misconduct, the Director *first* affirmed the PTAB's institution decision, Appx29-30, and *then* considered whether sanction-able misconduct occurred, Appx30.   The Director recognized, moreover, that sanctions could consist of "deny[ing] institution of AIA proceedings *or* termin-at[ing] instituted trials."   Appx30 (emphasis added).   PTO regulations similarly list "[j]udgment in the trial," "dismissal of the petition," and "[t]erminating the pro-ceedings" as available sanctions, after and independent of institution.   37 C.F.R. §§11.18(c)(5), 42.12(b)(8).   The Director concededly understood that.   PTO.Br.20; VLSI.Br.48-49.   The agency can, and does, "terminate" IPRs without deinstituting.

*IBM Corp. v. Intellectual Ventures II LLC*, IPR2014-01465, Paper 32 at 9-10 (PTAB Nov. 6, 2015). The PTO's contrary position here defies the decision below, regulations, and past PTO practice.

The PTO suggests that, because a decision "not to deinstitute *without* regard to sanctions" would be unreviewable, refusal to *terminate as a sanction* should also be unreviewable. PTO.Br.19. That makes no sense; the two are distinct. VLSI.Br.47. The first concerns the Director's authority to institute IPRs under § 314. The second concerns the Director's authority "to impose sanctions against a party for misconduct" under "§ 316(a)(6)." Appx63. Application of § 316(a)(6) is "'not limited to the institution stage,'" and thus falls outside § 314(d)'s appeal bar. *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018, 1026 (Fed. Cir. 2021). Accordingly, in *Apple Inc. v. Voip-Pal.com, Inc.*, this Court reviewed denial of "a sanction of judgment in [a litigant's] favor"—a form of terminating sanctions. 976 F.3d 1316, 1323-24 (Fed. Cir. 2020). The PTO's protest that the misconduct there "had no relation to the institution decision," PTO.Br.20, confirms that a request for terminating sanctions is *not* the same as a request for deinstitution. And OpenSky's misconduct persisted (indeed, escalated) "post-institution"—as the PTO recognizes. Appx80; VLSI.Br.11-15, 17-18, 47-48; PTO.Br.49-53.

That leaves the PTO to argue that "the sanctions determination was inextricably linked to the institution decision *by virtue of the Director's determination* that

the appropriate sanction should focus on the strength of the petition's merits." PTO.Br.20 (emphasis added).  That is frivolous.  Agencies cannot "regulate the scope of the judicial power vested by [a] statute." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990).  The Director could not insulate an otherwise-reviewable *sanctions* decision from judicial scrutiny by (arbitrarily) using a (now-repudiated) *institution*-related standard.[7]

Most of the PTO's cited cases did not involve sanctions, but garden-variety institution (and reconsideration thereof).  The one case implicating sanctions, *Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.*, recognized that sanctions decisions are "ordinarily" reviewable.  33 F.4th 1348, 1352-53 (Fed. Cir. 2022) (cited PTO.Br.20).  It simply found the decision there—granting termination of an IPR—unreviewable because it was *independently supported* by a "time bar" that warranted "vacat[ing the] institution decision" without regard to sanctions.  *Id.* at 1352-54.  The decision here, by contrast, is a *refusal to terminate* the IPR *as a sanction*.  That refusal cannot be justified without regard to sanctions.

---

[7] Besides, the Director emphasized that "compelling merits" is *not* the same as the "reasonable likelihood standard required for institution" under § 314(a).  Appx120-21; Appx86.  For that reason, too, the sanctions decision is not "closely tied" to an institution-specific statute.  *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016).

## II.    SECTION 315 BARRED INTEL'S JOINDER

Only a party that "*properly files* a petition under section 311" may be "join[ed] as a party" to another challenger's IPR.  35 U.S.C. §315(c) (emphasis added).  Intel's petition was not "properly file[d]," because Intel submitted it long after §315(b)'s 1-year deadline for filing "the petition" passed.

### A.    Intel's Untimely Petition Was Not "Properly File[d]"

1.    The Supreme Court has repeatedly held an "untimely petition would not be deemed 'properly filed.'"  *Pace v. DiGuglielmo*, 544 U.S. 408, 413, 417 (2005); *see Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Allen v. Siebert*, 552 U.S. 3, 6-7 (2007) (per curiam).  And no one disputes Congress understood the Supreme Court's construction of the term when it allowed joinder only of "properly filed" petitions.  *See* 154 Cong. Rec. S9988 (daily ed. Sep. 27, 2008) (Sen. Kyl) (citing *Pace*, *Artuz*, and *Allen*).  By limiting joinder to parties that "properly file[]" a petition, §315 clearly excludes parties, like Intel, that improperly file untimely petitions.

Intel says a properly filed "'petition under section 311'" need only comply with §311(c)'s time limits, not §315(b)'s.  Intel.Br.46.  But §311 *itself* "[s]ubject[s]" an IPR petition "to the provisions" of §315(b).  35 U.S.C. §311(a).  A properly filed petition under §311 thus must satisfy *both* §311(c) *and* §315(b).  Requiring compliance with §315(b)'s 1-year deadline also accords with the plain

meaning of "'properly filed,'" which chiefly concerns whether a petition is "untimely." *Pace*, 544 U.S. at 413.  Noncompliance with § 311(c) makes petitions premature, not untimely.

2.    Section 315(b) did not exempt Intel's petition from the 1-year deadline.  Its second sentence means exactly what it says: The deadline does "not apply to a *request for joinder.*" 35 U.S.C. § 315(b) (emphasis added).  It does not exempt the *petition* underlying a joinder request from that deadline.  VLSI.Br.51-53.

Intel urges that, because the "time limitation in § 315(b)'s first sentence applies to IPR petitions, not joinder requests," the second sentence's reference to "request[s] for joinder" should be read to "likewise appl[y] to petitions." Intel.Br.47; *see* PTO.Br.39-40.  That highlights Intel's departure from the text: Section 315(b)'s "first sentence applies to IPR petitions, *not joinder requests.*" Intel.Br.47 (emphasis added).  But its second sentence applies to joinder requests, *not IPR petitions*.  Intel may dislike the "distinction between 'petition[s]' and 'request[s] for joinder.'" Intel.Br.47.  But *Congress* drew that distinction.  It must be respected.  *Russello v. United States*, 464 U.S. 16, 23 (1983).

The PTO observes that it has read § 315(b) differently.  PTO.Br.39; *see* Intel.Br.45-46.  That *PTO regulations* may set "'a time period for *requesting joinder*,'" PTO.Br.40 n.7 (quoting 35 U.S.C. § 316(a)(12)) (emphasis added), underscores that *the statute itself* sets the time period for *filing a petition* that might

underlie an eventual joinder request.  In any event, courts interpret statutes without deference to agencies, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024), and all agree no court has resolved the question here.  VLSI.Br.52 n.10; Intel.Br.44-45.  Under the statute's plain meaning, Intel's untimely petition was not "properly file[d]" and its joinder was unlawful.  Insofar as the agency's position matters, it has changed on this topic as well.[8]

3.    Nothing prevents the Court from deciding that issue.  As the PTO has told the Supreme Court, this Court has already "held that Section 314(d) does not preclude judicial review of joinder decisions in this context."  Brief for Federal Respondent in Opposition 16-17, *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, No. 23-315 (U.S. Dec. 27, 2023) (citing *Facebook, Inc. v. Windy City Innovations*, 973 F.3d 1321, 1332 (Fed. Cir. 2020)).  Because a "joinder decision" is "separate and subsequent . . . to the institution decision," "challenges [to] whether the Board's joinder decisions exceeded the statutory authority provided by § 315(c)" are reviewable.  *Facebook*, 973 F.3d at 1332.  Here, VLSI argues the PTAB lacked authority to "'join [Intel] as a party'" to OpenSky's IPR, because Intel's petition was not "properly file[d]" under § 315(c).  That challenge does not

---

[8] Previously, time-barred parties were permitted to join IPRs as a matter of course.  *See, e.g.*, Appx18-19.  But the Acting Director has now ruled that "[p]etitions filed by time-barred parties should proceed only in exceptional circumstances."  *Realtek Semiconductor Corp. v. ParkerVision, Inc.*, IPR2025-00324/5, Paper 11 at 3 (Director June 25, 2025).  No one has identified exceptional circumstances here.  That change in policy requires remand regardless.

concern institution of Intel's petition, but "the manner in which *[OpenSky's] already-instituted IPR* proceeded." *Id.* (emphasis added).

The PTO cites *Fitbit, Inc. v. Valencell, Inc.*, 964 F.3d 1112, 1115 (Fed. Cir. 2020). PTO.Br.36-37. But no one challenged the joinder decision in *Fitbit*. *See generally* Brief for Appellee in No. 19-1048, Dkt. 20 at 20-41 (2019 WL 1013123). Any musing about reviewability of a hypothetical challenge was dictum.[9] "'[D]rive-by jurisdictional rulings' . . . should be accorded 'no precedential effect.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 (2025).[10]

## B.    Intel's Unlawful Joinder Requires Vacatur

Intel's unlawful participation requires vacatur. VLSI.Br.53-55. Given this case's many twists, one cannot confidently say "the agency's error 'had no bearing on the procedure used or the substance of [the] decision reached.'" *FDA v. Wages & White Lion Investments, LLC*, 145 S. Ct. 898, 930 (2025).

Had Intel not been available to step in as "lead petitioner," Appx88; Appx82, the Director may have terminated this IPR, either when OpenSky was dismissed or when it was barred from participating, VLSI.Br.54-55. The PTO and

---

[9] That musing was apparently inspired by language in the patent owner's Statement noting that the joined party filed its petition after § 315(b)'s 1-year deadline. *See* No. 19-1048, Dkt. 20 at 13. The patent owner never asserted joinder was unlawful.

[10] Intel asserts VLSI did not make its argument below, Intel.Br.46 n.8, but never argues forfeiture. Intel thus "forfeited any forfeiture argument." *United States v. Mohammed*, 89 F.4th 158, 165 n.4 (D.C. Cir. 2023). Regardless, VLSI explained Intel was "time-barred," Appx14119-23, but PTO regulations and precedent already made that irrelevant, Intel.Br.45-46.

Intel insist the Director *could* have plowed ahead anyway. PTO.Br.38; Intel.Br.48. But they never say she *had* to. And they ignore agency precedent "terminat[ing]" IPR proceedings upon finding the sole petitioner "cannot participate" and "thus, effectively, no Petitioner remains." *IBM*, IPR2014-01465, Paper 32 at 9-10 (cited VLSI.Br.54-55).[11]

The PTO and Intel likewise have no answer to Intel's prejudicial commandeering of the IPR. They nowhere dispute that OpenSky "did not intend to pursue the patentability merits," Appx69-71; Appx77-78—so Intel took over. Intel alone argued at the hearing below. VLSI.Br.53-54. Intel supplied "a fully complete reply brief *[and] supporting expert declaration*." Appx71 (emphasis added). Those submissions were petitioners' *sole* response to VLSI's patentability arguments, and the final written decision *repeatedly* relied on them. VLSI.Br.53 & n.11. Intel's improper participation plainly could have "affected the outcome." PTO.Br.38. Yet the PTO and Intel never mention it.

The PTO invokes *VirnetX Inc. v. Mangrove Partners Master Fund, Ltd.*, 778 F. App'x 897 (Fed. Cir. 2019). PTO.Br.37-38; *see* Intel.Br.48-49. But that case found no prejudice because the original petitioner remained in charge and the joined party's involvement was restricted. *VirnetX*, 778 F. App'x at 902. Here, by

---

[11] OpenSky's (arbitrary) reinstatement, Intel.Br.49; pp. 18-20, *supra*, is irrelevant. OpenSky still could not participate on the merits, PTO.Br.31-32; Appx84, leaving—as in *IBM*—"effectively, no Petitioner."

contrast, OpenSky tried to sabotage the IPR and was barred from participating, while Intel was named "lead petitioner." Appx88. That Intel is the *only* party defending the PTAB's unpatentability rulings before this Court underscores the prejudice.

The Supreme Court has emphasized that, where an agency commits error, "'the court should generally reverse and remand even though it discerns a possibility, even a strong one, that by another course of reasoning the agency might come to the same result.'" *Wages & White Lion*, 145 S. Ct. at 930 (emphasis omitted). That standard is more than met here. The PTO effectively concedes the agency would *not* come to the same result—it admits the Acting Director "would not" have proceeded with the IPR given OpenSky's "serious misconduct" and Intel's "time barred" status. PTO.Br.22. That concession cements the need for remand.

## III. THE PTAB'S OBVIOUSNESS DETERMINATIONS CANNOT BE SUSTAINED

Neither the PTO nor OpenSky attempts to defend the PTAB's obviousness determinations. Intel's efforts to do so fail.

### A. The PTAB Misconstrued the "Request" Limitation

#### 1. *The Plain Meaning of "Request" Excludes Commands*

The PTAB's determination of obviousness over Schaffer rested on its erroneous construction of "request" to include *commands*. VLSI.Br.62. But the plain meaning of "request" is permissive: It means an "*ask*," not a *command*. Intel

cites no dictionary, technical or general, defining "request" to encompass a "command."  Nor can it deny that, in ordinary English, saying something is "'*not* a request'" signifies that it is a *command*.   VLSI.Br.55-56 & n.12 (emphasis added).[12]

The specification reinforces the plain meaning of "request."  It uniformly describes "request" in permissive terms; spends pages describing criteria for deciding *whether or not* to grant requests; and *every* illustrated embodiment depicts a "decision step" wherein a clock controller decides whether or not to grant the request.  VLSI.Br.56-59.  Intel quibbles that claim 1 "does not even recite a 'clock controller.'"  Intel.Br.36.  Intel does not say what would control the clock other than a clock controller.  Regardless, the point is that *every* illustrated embodiment specifically shows that a "request" may or may not be granted; whether that is done by the clock controller or something else is irrelevant.

VLSI does not seek to "'improperly limit the claims to embodiments.'"  Intel.Br.36-37.  The plain meaning of "request" does not include "commands."  That *every* embodiment (claimed and unclaimed) describes the "request" as permissive is powerful evidence of how skilled artisans would understand the term

---

[12] Intel's attempted rebuttal backfires.   "'Our command is your request,'" Intel.Br.36 n.6, is a catchy phrase because "command" is *not* the usual meaning of "request."  It does not show "a command is a type of 'request,'" *id.*, any more than "Your wish is my command" shows a "command" is a type of "wish."  *See* https://www.youtube.com/watch?v=DkmsZ9Ha_7A.

in this patent.  VLSI.Br.59-60; *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016).

Intel retreats to the single supposed "example" the PTAB deemed "consistent" with a putatively mandatory "request."  Intel.Br.37.  That example does not use the word "request"; it states that "[t]he clock controller *can* output a variable clock frequency that varies in response to one or more inputs from the at least one master device."  Appx248(2:38-40) (emphasis added).  Even assuming that passage refers to a "request," "can" does not mean "must."  VLSI.Br.60.  It means "is capable of."  VLSI.Br.64.  That example hardly shows that "request" encompasses "commands," contrary to its plain and ordinary meaning.

With ordinary meaning against it, Intel pivots.  Intel insists the real issue is not the meaning of "request," but "the capability of the [claimed] system" and whether it may be "designed to grant all requests."  Intel.Br.34.  But this is a quintessential claim-construction issue: As a matter of ordinary meaning, the term "request" *itself* makes clear the system must be able *to decide whether*—or not—to grant the request.  VLSI.Br.55.  That the "challenged claims" do not specify what happens when the request is denied, Intel.Br.34-35, is irrelevant.  A claim need not describe every single aspect of the invention.  *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1181 (Fed. Cir. 1991).  And there is no need to spell it out: If the request is

32

granted, clock frequency increases as described in claim 1; if not, then not. Appx251(8:9-15).

Intel's cases on "negative limitation[s]," Intel.Br.37, are irrelevant. VLSI is not proposing a "negative limitation." It is relying on the ordinary, affirmative meaning of "request," which does not encompass commands. Regardless, in Intel's cases, "nothing in the claim language" or "specification" supported the proposed negative limitation. *Uniloc 2017 LLC v. Sling TV, L.L.C.*, No. 23-1156, 2024 WL 4038034, at *2 (Fed. Cir. Sep. 4, 2024); *see Ethicon LLC v. Intuitive Surgical, Inc.*, 847 F. App'x 901, 907-08 (Fed. Cir. 2021); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1059-60 (Fed. Cir. 2009). Here, both the claim language and the specification dictate VLSI's construction: "Request" means *request*, not *command*.

### 2. *Prosecution History Does Not Support the PTAB's Construction*

In resorting to prosecution history, Intel never denies that the record does not reveal *why* claims were rewritten to omit a "determining" step. Intel.Br.38; VLSI.Br.60-61. Nor does Intel address the most obvious explanation—the claims were streamlined to avoid redundancy, because "request" already implies "determining" whether to grant it. VLSI.Br.61. Regardless, at-best-ambiguous prosecution history cannot overcome the clear import of the claim language and

specification. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006).

### 3. *The PTAB's Resort to Extrinsic Evidence Was Impermissible*

Because the intrinsic evidence is clear, resort to extrinsic evidence was unwarranted. VLSI.Br.61; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584-85 (Fed. Cir. 1996). Extrinsic evidence cannot overcome plain meaning. Intel says its extrinsic evidence shows a "'typical usage of the term in the relevant art.'" Intel.Br.35. But it can muster only a *single* example of a prior-art reference using the term that way. A single extrinsic reference hardly establishes "typical" usage—much less usage so compelling as to override unambiguous *intrinsic* evidence to the contrary. VLSI.Br.55-60; pp. 30-34, *supra*.

### 4. *The Obviousness Determination over Schaffer Cannot Stand*

Intel does not dispute the PTAB's obviousness determination rested on its expansive construction of "request." VLSI.Br.62. Intel requests affirmance even under VLSI's construction, invoking Schaffer. Intel.Br.39. But an agency decision can be upheld only on the grounds the agency gave. *Chenery*, 318 U.S. at 87. This is nothing like *Micrografx, LLC v. Google Inc.*, 672 F. App'x 988, 991 (Fed. Cir. 2016), where the reference at issue "unquestionably" disclosed the limitation. Whether Schaffer discloses a "request" under VLSI's construction was a

hotly contested factual dispute, as the PTAB recognized.    Appx178; *see* Appx1389-91.  Remand is required.

### B.    The PTAB Made No Findings on Lint

The law is clear: The "PTAB cannot satisfactorily make a factual finding and explain itself by merely 'summariz[ing] and reject[ing] arguments without explaining *why* [it] . . . accepts the prevailing argument.'"  *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1046 (Fed. Cir. 2017) (emphasis added).  Here, the PTAB made no findings whatsoever about Lint.  VLSI.Br.62-63.  As Intel admits, the PTAB merely summarized Intel's arguments on Lint and then, twelve pages later, pronounced the claims obvious based on the "full record."  Appx177; Appx189; *see* Intel.Br.40-41.  That is not reasoned decisionmaking.

Intel protests that VLSI "did not contest any issues relating to Lint." Intel.Br.40 (emphasis omitted).  But the PTAB cannot adopt a party's argument simply because the other party "'d[id] not challenge'" it—the PTAB must explain "'*why*'" it credited the argument.  *Icon Health*, 849 F.3d at 1047 (emphasis added).  None of Intel's cases suggests otherwise.  In *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 905 (Fed. Cir. 2018), the Court relied on "the Board's hundreds of pages of analysis in [six related] proceedings."  In *Intel Corp. v. Alacritech, Inc.*, 817 F. App'x 1014, 1018 (Fed. Cir. 2020), the PTAB set forth "specific pages" of argument "with which it agreed."  And in *Ignite USA, LLC v. CamelBak Prods.,*

*LLC*, 709 F. App'x 1010, 1015 (Fed. Cir. 2017), the PTAB relied on specific expert testimony.  Here, the PTAB never identified *what* evidence or arguments it found persuasive, or *why*—it simply summarized Intel's arguments.  Appx194-95.  That is "insufficient," either to hold the petitioner to its burden of proof or to satisfy the duty of reasoned decisionmaking.  *Icon Health*, 849 F.3d at 1047; VLSI.Br.62-64.

### C. The PTAB's Motivation-To-Combine Finding for Chen/Terrell Is Unsupported and Unreasoned

The PTAB's ruling based on Chen and Terrell fares no better.  Combining Chen and Terrell requires discarding Chen's central principle of operation—operating at *higher* frequency whenever "possible"—to implement its opposite: operating at a *minimum* frequency whenever possible.  Appx4316(3:20-29); Appx4323[0005]; VLSI.Br.64-67.  Such a "change in the basic principles under which" Chen "was designed to operate" is "not a proper ground" for obviousness.  *Application of Ratti*, 270 F.2d 810, 813 (C.C.P.A. 1959); VLSI.Br.64-67.

Intel does not dispute that a reference cannot render an invention obvious if one must change the reference's "basic principles" of operation.  Instead, Intel repeats the Board's assertion that skilled artisans would modify Chen "to save power."  Intel.Br.28-29, 31-32.  But a "generic" and "conclusory" motivation to save power is insufficient to support a motivation to "combine[] elements from specific references in the way the claimed invention does," particularly when one

reference teaches the *opposite* operation from the proposed combination. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012) (emphasis omitted). Intel notes that *Terrell* teaches that power savings are "desirable." Intel.Br.28-29. Whether attributed to Terrell or skilled artisans generally, the general desirability of power savings would not have convinced skilled artisans to "contradic[t] [*Chen's*] basic teachings." *Univ. of Maryland Biotech. Inst. v. Presens Precision Sensing GmbH*, 711 F. App'x 1007, 1010 (Fed. Cir. 2017). None of Intel's cases (Intel.Br.29) holds that general desirability can overcome a reference's specific contrary teachings.

Like the PTAB, Intel insists the combination would not "'defeat[] Chen's intended purpose'" because Chen "'discloses operating at lower speeds for certain circumstances.'" Intel.Br.29-30, 32. But Intel never addresses, much less disputes, that Chen discloses operating at lower frequencies *only when necessary*. VLSI.Br.65-66. Intel invokes a passage noting that I/O devices may be run at "50 Mhz" rather than "66 Mhz." Intel.Br.29-30; *see* Appx4316(3:20-45). But, as VLSI explained, Chen says that should be done only when high-frequency operation is not "possible," and then only to make it easier to "step up" to 100 Mhz when high-frequency operation becomes possible. Appx4316(3:20-45); VLSI.Br.65-66. Intel invokes embodiments where increased frequency is used "'only [for] memory read and write operations.'" Intel.Br.30 (quoting

Appx4316(4:24-36)).    But, as VLSI explained, Chen makes clear lower frequencies should be used *only* when needed for backward compatibility with devices "designed to operate at a lower frequency."    Appx4316(4:28-39); VLSI.Br.65; *see* Appx10497-98(¶¶153-154).  That reflects Chen's basic principle that lower frequencies should be used only when *necessary*, such as for backward compatibility.  VLSI.Br.65; Appx10497-98(¶¶153-154).  Intel has no response.

Intel protests that Chen's principle of maximizing frequency whenever possible is unrealistic because it would require operating at high frequency "even during idle states."  Intel.Br.31.  But Chen's principle is to operate the I/O system at a high frequency whenever it has data to transfer—and thus, by definition, when it is not idle—in order to "keep a CPU *constantly* running."  Appx4315(1:48-50) (emphasis added); Appx4315(2:14-21).    Intel's "idle state" argument thus misunderstands Chen.   Chen's principle of maximizing frequency would not require high-frequency operation during idle states.

Intel invokes the PTAB's statement that the proposed Chen/Terrell system "would have been *able* to operate."  Appx195 (emphasis added); Intel.Br.32.  That Chen and Terrell "*could be* combined," however, "does not imply a *motivation* to pick out those two references and combine them to arrive at the claimed invention," *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir.

38

2017) (emphasis added)—much less motivation to combine them despite their polar-opposite teachings.

### D.    The PTAB's Determinations Regarding Claims 17, 18, 21, 22, and 24 Are Unreasoned

The lack of reasoned findings about claims 17, 18, 21, 22, and 24 requires remand.  VLSI.Br.68.  As Intel admits, the PTAB merely noted Petitioners' arguments and that VLSI "did not dispute" them.  Intel.Br.41-42.  But *Icon Health*—which Intel does not even try to distinguish—rejected that as "insufficient"; the PTAB must explain "'why'" it "'accepts the prevailing argument,'" *even if* the patent owner "'d[id] not challenge'" it.  849 F.3d at 1046-47; pp. 36-39, *supra*.  The PTAB's "treatment" of the issues was not "'limited.'"  Intel.Br.41-42.  It was nonexistent.

## CONCLUSION

The decisions challenged in VLSI's appeal, including the Director's sanctions decisions and the PTAB's final written decision, should be reversed or vacated.

39

## RESPONSE TO CROSS-APPEAL

OpenSky's cross-appeal is partially correct: The Director's sanctions decisions *were* deeply flawed. But that is because OpenSky's extensive misconduct warranted far *stronger* sanctions than the meager attorney's fees the Director imposed, and the Director's vacillations defied reasoned decisionmaking. OpenSky's cross-appeal nonetheless argues that the Director sanctioned it *too harshly*, or that the Director lacked authority to investigate and punish its misconduct. Those arguments are unavailing. The Director permissibly ordered discovery into OpenSky's machinations. She correctly found that OpenSky flouted her discovery orders. She properly found that OpenSky committed egregious misconduct, including "abuse of process" and pursuing this IPR for the "improper purpose of extracting money from either or both Intel and VLSI." Appx40; Appx74; Appx76.

OpenSky's arguments do not undermine those conclusions. Insofar as OpenSky identifies any defect in the Director's reasoning, that would only underscore the need to vacate and remand for proper consideration of sanctions issues—including whether this case should be terminated altogether.

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether the Director permissibly found that OpenSky committed sanctionable misconduct, including pursuing this IPR for the improper purpose of extorting VLSI and Intel.

2.      Whether the Director permissibly ordered discovery regarding OpenSky's misconduct.

3.      Whether the Director had authority to order attorney's fees as a sanction.

## COUNTERSTATEMENT OF THE CASE

OpenSky's cross-appeal challenges three aspects of the Director's sanctions decisions: (I) the validity of the discovery orders OpenSky violated; (II) the Director's finding that OpenSky committed abuse of process by, among other things, leveraging the IPR to extort VLSI and Intel; and (III) the Director's fee-award sanction.   The facts relevant to OpenSky's cross-appeal are discussed extensively in other briefing in this appeal.   VLSI summarizes them here with citations to the more detailed discussions.

## I.    THE DIRECTOR ORDERS DISCOVERY INTO OPENSKY'S MISCONDUCT

OpenSky was formed and filed this IPR shortly after VLSI won a large verdict against Intel for infringement of the '759 patent.   OpenSky then attempted to extort VLSI by demanding exhorbitant payments in exchange for "'deliberately sabotag[ing]'" its own IPR.   VLSI.Br.12-13.   VLSI reported OpenSky's conduct to

the PTAB, which nonetheless instituted OpenSky's IPR and joined (time-barred) Intel.  VLSI.Br.11-13.

In July 2022, the Director affirmed the PTAB's decision to institute OpenSky's IPR, and ordered inquiry into whether OpenSky had committed "abuse of process" or other sanctionable misconduct.  Appx29-34; VLSI.Br.17.  The Director specifically noted VLSI's allegation that OpenSky was trying "'to extract ransom payments in exchange for withdrawing abusive attacks.'"  Appx28; Appx29-32.  She explained that sanctions for such misconduct can include "terminat[ing]" the proceeding.  Appx30.

The Director ordered discovery, including interrogatories and document production, into OpenSky's ownership, funding, purpose, relationship with Intel, and communications with VLSI.  VLSI.Br.17; Appx30-32.  She granted OpenSky 50 pages of briefing to explain why there was no abuse of process or other sanctionable misconduct.  Appx34-35.  And she warned that noncompliance with her discovery orders may result in sanctions.  Appx32 (citing 37 C.F.R. §42.11).

## II.   THE DIRECTOR FINDS THAT OPENSKY FLOUTED DISCOVERY ORDERS AND PURSUED THIS IPR FOR THE IMPROPER PURPOSE OF EXTORTION

In October 2022, the Director issued a sanctions decision finding that OpenSky flouted her discovery orders.  VLSI.Br.17-18.  OpenSky's responses to the Director's inquiries were "deficient," "misleading," "non-responsive," "evasive," "unsubstantiated," and "unsupported."  Appx52, Appx56-62.  OpenSky

had refused to answer several interrogatories, Appx31, Appx56-62; failed to produce responsive documents, Appx59-62; and refused to provide a privilege log, Appx52. OpenSky's discovery violations prevented creation of a "complete record to fully examine" OpenSky's actions. Appx64. The Director rejected OpenSky's objections. Appx53-55. She found OpenSky's violations warranted sanctions, including adverse inferences. Appx66-80.

The Director also found that OpenSky pursued this IPR for the purpose of "extorting" VLSI and Intel, and that its misconduct amounted to "abuse of process." Appx74; Appx81. Those findings rested on evidence VLSI and Intel produced in discovery, as well as adverse inferences warranted by OpenSky's discovery violations. VLSI.Br.17-19; Appx65-81. The Director refused to terminate the IPR, however, based on the "compelling merits" standard derived from her now-rescinded June 2022 Memorandum. VLSI.Br.20-22; pp. 7-8, *supra*.

## III. THE DIRECTOR ORDERS OPENSKY TO PAY LIMITED ATTORNEY'S FEES

Rather than terminate the IPR, the Director ordered briefing on whether OpenSky should pay attorney's fees incurred as a result of its misconduct. Appx88. In February 2023, the Director issued another sanctions decision. That decision noted that OpenSky's "improper motive in filing its petition" was "one of many factors" the Director considered in reaching her sanctions decision. Appx135. The Director noted that, even if she were to "set aside" OpenSky's

motives in filing its petition, she "would reach the same decision" on sanctions "based solely on [OpenSky's] misconduct revealed and committed in the course of [Director] review." Appx135-36.

The Director rejected OpenSky's arguments against a fee award. Appx128-38. She noted that, "[b]ut for OpenSky's misconduct, VLSI would not have incurred the fees necessary to address OpenSky's misconduct in the case and upon Director review." Appx137-38.

In December 2023, the Director ordered OpenSky to pay attorney's fees that VLSI incurred in responding to OpenSky's misconduct. Appx209-37. The Director examined billing records and sorted attorney time into six categories of activities: pre-institution, request for precedential panel opinion, settlement negotiations, ethical research, Director review, and attorney's fees briefing. Appx226-32. For each category, she assessed what fees derived from OpenSky's misconduct. Appx226-32. The Director excluded time spent on "the merits of th[e] proceeding." Appx139, Appx227.

## SUMMARY OF ARGUMENT

I.    The Director properly concluded that OpenSky pursued this IPR for improper purposes, including to extort VLSI. Using a legal proceeding for extortion constitutes an abuse of PTO processes, and the Director has ample authority to sanction such an abuse. OpenSky forfeited any contrary argument.

OpenSky received ample notice and opportunity to respond before being sanctioned.

II.     OpenSky brazenly violated the Director's discovery orders.  OpenSky now attacks those orders' validity.  But the orders were amply supported by statute, regulation, and the facts of this case.

III.     The Director had statutory and regulatory authority to order OpenSky to pay attorney's fees.  The statute authorizes sanctions, which include fee awards.  The regulations expressly authorize fee awards as sanctions.  OpenSky cannot evade the fee award by mischaracterizing the Director's causation analysis.  Nor does *Noerr-Pennington* immunize OpenSky's litigation misconduct.

## ARGUMENT

### I.     THE DIRECTOR PROPERLY DETERMINED THAT OPENSKY'S MISCONDUCT MERITED SANCTIONS

The Director sanctioned OpenSky for, among other things, committing "abuse of process" and pursuing this IPR for the "improper purpose of extracting money from either or both Intel and VLSI."  Appx40; Appx74; Appx76.  That determination was within the Director's authority and supported by the record.

#### A.     Substantial Evidence Supports the Director's Finding That OpenSky Abused the IPR Process and Pursued the IPR for Improper Purposes

The Director found that OpenSky "abused the IPR process" by pursuing an IPR "for the primary purpose of extorting money, while being willing to forego or

sabotage the adversarial process." Appx40; Appx81. The record amply supports that finding.

1.    OpenSky was created—and filed this IPR—almost immediately after VLSI won a significant damages award on the '759 patent. Appx8095-96. OpenSky had no other business activities; it exists for no purpose other than filing IPRs against VLSI for the patents underlying VLSI's judgment. Appx73-74; Appx1710-11; Appx62. After filing its petition—copied almost verbatim from Intel's prior (unsuccessful) petition—OpenSky tried to extract exorbitant sums of money from VLSI, culminating in OpenSky's proposal to "deliberately sabotage" its own IPR for payment from VLSI. Appx1771-72; Appx68-69. When VLSI would not cooperate, OpenSky turned to Intel, threatening to torpedo the IPR unless Intel paid OpenSky "compensation for its prior work," plus "additional remuneration." Appx7391. That conduct, the Director found, made clear that OpenSky "had no interest in meaningfully pursuing the unpatentability grounds in its Petition," but rather was seeking to "leverage the IPR's existence only to extract a payout from one side or the other." Appx70; Appx78. Taken together, those facts showed that OpenSky pursued this IPR "for the improper purpose of extracting money from either or both Intel and VLSI"—that is, "to extort." Appx74; Appx80.

OpenSky scarcely denies its extortive purpose. It never disputes the ample evidence supporting the Director's finding of OpenSky's improper, abusive conduct. It contends the Director failed to consider "significant contrary evidence provided by OpenSky," but offers only one example of supposedly overlooked evidence—the Director's finding, based on an adverse inference, that OpenSky was the one that initiated settlement discussions with VLSI. OpenSky.Br.60-63.[13] But the adverse inference was warranted by OpenSky's "egregious" discovery misconduct. Appx65. That misconduct was not mere "non-production." OpenSky.Br.62. OpenSky undisputedly "flouted" the Director's discovery orders, "refus[ed] to provide confidential documents," and gave responses that were "deficient," "misleading," "non-responsive," "evasive," "unsubstantiated," and "unsupported." Appx52, Appx56-81. Those actions deprived the Director and the other parties of a "complete record" that would allow them to evaluate OpenSky's conduct. Appx64. It was thus appropriate for the Director to "hold disputed facts as established against OpenSky." Appx64. And while OpenSky contends the question of who initiated settlement discussions was not disputed, it was. Appx1770-71; *see* PTO.Br.58.

---

[13] Although OpenSky purports to challenge the Director's reliance on adverse inferences generally, the only inference it actually challenges is the Director's finding that OpenSky, rather than VLSI, initiated settlement talks. *See* OpenSky.Br.60-63.

Even if VLSI *had* initiated settlement discussions, that would not change the extortionate conduct that followed. That included OpenSky's exorbitant ransom demands and its offers to sabotage its own IPR for money. *See* pp. 41-42, *supra*. That conduct—documented in OpenSky's own emails with VLSI and Intel, Appx10355-56—is itself substantial evidence that OpenSky abused the IPR process.

**B. The Abuse-of-Process Finding Was Within the Director's Statutory Authority and Was Not Arbitrary or Capricious**

The Director's finding that OpenSky should be sanctioned for abuse of process and improper use of the proceeding was within her authority to sanction "abuse of discovery, abuse of process, or any other improper use of the proceeding." 35 U.S.C. §316(a)(6); *see* 37 C.F.R. §§42.12(a)(7), 11.18(b)(2)(i), 42.11(c)-(d).

1. OpenSky argues that the Director ignored two "elements" of the *common-law tort* of abuse of process identified in the Restatement (Third) of Torts §26 (2020). OpenSky.Br.63-64. According to OpenSky, the Third Restatement requires the abused "process" to be something other than abusive pursuit of the proceeding itself—*i.e.*, issuance of an "order that is then wrongfully used"—and there must be an "ulterior" motive for the abuse. OpenSky.Br.63-64. OpenSky made no such argument below. To the contrary, OpenSky disclaimed any "knowledge or opinions regarding how to assess . . . abuse of process." Appx1710.

It nowhere suggested that purported common-law tort requirements define the Director's *statutory* authority to sanction "abuse of process"; it never cited the Third Restatement; and it did not demand the Director find both an ulterior motive and abuse of some process apart from OpenSky's abusive pursuit of, and conduct during, the IPR itself.  OpenSky cannot sandbag by failing to demand compliance with supposed elements before the agency—indeed, disclaiming any such argument—only to spring them on appeal.  OpenSky's argument is thus waived.  *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Laboratories Inc.*, 923 F.3d 1368, 1378 (Fed. Cir. 2019).

Besides, the Director's sanctions authority is not limited to "abuse of process."  The statute allows the Director to sanction a broad range of misconduct, including "abuse of discovery, abuse of process, *or any other improper use of the proceeding*." 35 U.S.C. §316(a)(6) (emphasis added); *see* 37 C.F.R. §§42.12(a)(7), 11.18(b)(2)(i), 42.11(c)-(d).  The Director found that "[e]ach aspect of OpenSky's conduct—discovery misconduct, violation of an express order, abuse of the IPR process, and unethical conduct—taken alone, constitutes sanctionable conduct." Appx40.  The Director's sanction rests on her findings that OpenSky pursued this IPR for the "improper purpose" of "extorting money" from VLSI; that OpenSky "flouted" her discovery orders; that OpenSky "refus[ed] to provide confidential documents"; and that OpenSky gave responses that were "deficient," "misleading,"

49

"non-responsive," "evasive," "unsubstantiated," and "unsupported." Appx52, Appx56-81. OpenSky cannot explain how it was injured by the Director's decision to label some of that sanctionable conduct "abuse of process" rather than calling it "improper use of the proceeding" (for extortionate purposes). At most, OpenSky's argument about the precise contours of the "abuse of process" label would support a remand—at which point the Director could reconsider the chosen sanction entirely.

2.      OpenSky's argument fails on the merits anyway. OpenSky contends the Director was required to find that OpenSky abused "formal court 'process'" in the "strict" sense of the Restatement (Third) of Torts—that is, "'instruments by which courts assert their jurisdiction and command others.'" OpenSky.Br.63-64. But OpenSky fails to explain why the phrase "abuse of process" in the statute or regulations must follow all the "strict" elements of the common-law tort as articulated in the Third Restatement. The relevant volume of the Restatement (Third) was published in 2020—it had not been adopted when the AIA was published in 2011, or when the sanctions regulations were promulgated in 2012. Then, and even today, authorities often recognize that the abuse-of-process tort does not require abuse of a "formal order or document issued by a court"; *any* "actions undertaken by a litigant in pursuing a legal claim" may suffice. *Reichhart*

*v. City of New Haven*, 674 N.E.2d 27, 31-32 (Ind. App. 1996).[14]  The Second

Restatement explains that the "usual case of abuse of process is one of *some form*

*of extortion*."  Restatement (Second) of Torts § 682 (1977) (emphasis added).  It is

"the use of the process" as "a form of extortion"—"what is done in the course of

negotiation, rather than the issuance or any formal use of the process itself"—

which constitutes the tort.  Keeton, *Prosser and Keeton on Torts* §121, at 898 (5th

ed. 1984).  That describes what OpenSky did—"using an AIA proceeding to extort

money," threatening not to file a reply or depose witnesses without additional

payment, and "flout[ing]" discovery orders, Appx75-81—to a tee.

OpenSky's argument that the Director "fail[ed]" to identify an "ulterior or

collateral purpose," OpenSky.Br.64, fares worse still.  The Director found that

OpenSky's "primary purpose" was using the IPR to "extort[] money" from VLSI

and Intel.  Appx80-81.  OpenSky had "no interest in meaningfully pursuing the

unpatentability grounds in its Petition," and repeatedly threatened to "sabotage" its

own IPR in exchange for "'remuneration'" from anyone who would pay.  Appx68-

71.  As the Director concluded, Appx81, that is "extort[ion]," Appx81, not the

---

[14] *See also, e.g.*, *Three Lakes Ass'n v. Whiting*, 255 N.W.2d 686, 690 (Mich. App. 1977) (pursuing action with "ulterior purpose" sufficient); *T.B. Proprietary Corp. v. Sposato Builders, Inc.*, No. 94-cv-6745, 1996 WL 674016, at *3 (E.D. Pa. Nov. 20, 1996), *aff'd* 135 F.3d 766 (3d Cir. 1997) ("unlawful or ulterior goal not only in initiating but pursuing the litigation"); *Barquis v. Merchants Collection Ass'n*, 496 P.2d 817, 824 n.4 (Cal. 1972); *Hough v. Stockbridge*, 216 P.3d 1077, 1086 (Wash. App. 2009).

ordinary "pursuit of economic gain" "typical … of patent litigation," OpenSky.Br.64-65, 67.

OpenSky relies on the PTAB's observation in *Coalition for Affordable Drugs VI, LLC v. Celgene Corp.*, IPR2015-01092, Paper 19 at 2 (PTAB Sep. 25, 2015), that "economic motive for challenging a patent claim does not itself raise abuse of process issues." But the "economic motive" there was to lower drug prices by invalidating patents that prevented competition. *Id.* at 2-4. The "economic motive" here was to use the IPR proceeding as leverage to "extort money," while "sabotag[ing] the adversarial process." Appx80-81. That is a far cry from using the IPR process in the ordinary course to pursue "economic gain." OpenSky.Br.64-67 (citing cases); *see* Appx81.

### C.    OpenSky Received Notice and Opportunity To Respond

OpenSky's contention that it lacked notice and an opportunity to respond before the Director issued her October 2022 sanctions order, OpenSky.Br.67-70, is meritless. In July 2022, the Director warned OpenSky that she was investigating whether OpenSky committed "abuse of process" or other misconduct, specifically citing VLSI's allegation that OpenSky was trying "'to extract ransom payments in exchange for withdrawing abusive attacks.'" Appx28-32. She explained that sanctions for such misconduct may include "terminat[ing] instituted trials." Appx30. She ordered discovery and warned that noncompliance may result in

sanctions.  Appx32 (citing 37 C.F.R. §42.11).  She gave OpenSky 50 pages of briefing to respond and explain why there was no abuse of process, Appx34-35, and allowed discovery objections, Appx1571-72.  OpenSky received more than adequate notice and opportunity to respond before the Director issued her October 2022 order.

OpenSky complains that the February 2023 order relied on "[d]iscovery misconduct" that "had been treated as a separate issue," and that the Director had "never discussed it as a basis for abuse of process or awarding attorney's fees." OpenSky.Br.69.  But OpenSky's discovery misconduct was always part-and-parcel of its improper, abusive use of the IPR process.  OpenSky's "failure to comply with [the Director's] ordered Mandated Discovery provisions" meant that the Director did "not have a complete record to fully examine OpenSky's assertion that it ha[d] not committed an abuse of the IPR process" to begin with.  Appx64. The Director relied on no new facts in her February 2023 order.  OpenSky had every opportunity to respond to all the allegations of misconduct identified in the February 2023 order in OpenSky's *50 pages* of briefing addressing misconduct allegations.  That was more than a "'fair opportunity'" for OpenSky "'to react to

the thrust'" of the allegations against it.  *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015).[15]

## II.  THE DIRECTOR WAS AUTHORIZED TO ORDER DISCOVERY INTO OPENSKY'S MISCONDUCT

OpenSky never denies it blatantly violated the Director's discovery orders. As the Director found, OpenSky's responses were "deficient," "misleading," "non-responsive," "evasive," "unsubstantiated," and "unsupported."  Appx52, Appx56-62; *see* pp. 43-44, *supra*.  OpenSky never contends otherwise.  Nor does OpenSky dispute that openly and intentionally violating valid discovery orders is sanctionable misconduct.  Instead, OpenSky argues the Director lacked authority to order discovery into OpenSky's misconduct in the first place.  OpenSky.Br.55-59.

Statutory and regulatory authority abounded.  The AIA authorizes the PTO to establish regulations "setting forth standards and procedures for discovery of relevant evidence" in IPR proceedings, as well as regulations "prescribing sanctions" for abuse of process and other misconduct.  35 U.S.C. §316(a)(5)-(6).  The resulting regulations are not limited to specifying "[r]outine discovery" in IPRs; they state that the agency "may otherwise order" different or additional

---

[15] OpenSky complains that the Director did not allow it an opportunity to "cure" its discovery misconduct.  OpenSky.Br.9, 40, 59, 62.  But OpenSky offers no authority suggesting opportunity to cure was necessary.  Nor does it elaborate on what "cure" would look like.  Any argument based on lack of opportunity to cure is thus waived.  *In re Killian*, 45 F.4th 1373, 1385-86 (Fed. Cir. 2022).

54

discovery. 37 C.F.R. §42.51(b)(1).[16]  The Director permissibly did that here.  To investigate OpenSky's "misconduct" and consider "sanction[s]," §42.12(a), the Director "order[ed]" discovery that "otherwise" would not be required, §42.51(b)(1).  While OpenSky asserts that the Director's authority to "otherwise order" discovery is "sharply restrict[ed]," OpenSky.Br.55, nothing in §42.51(b)(1) says so.  That capacious language readily permitted the Director to address the circumstances here.

Besides, if §42.51(b)(1) did not authorize the discovery here, §42.5(a) would.  That regulation allows the Director to "determine a proper course of conduct" "for any situation not specifically covered" by other regulations, including by issuing "orders to administer the proceeding."  37 C.F.R. §42.5(a).  The Director reasonably determined, consistent with her authority to sanction misconduct, that the "proper course" here was to order discovery that would facilitate her inquiry into the propriety and scope of sanctions.  *See* Appx32-33; Appx53.

OpenSky argues the Director could not issue "interrogatories" "because the IPR regulations authorize only document requests, depositions, and declarations." OpenSky.Br.55.  But the Director may order discovery beyond that expressly

---

[16] While the regulations refer to "the Board," 37 C.F.R. §§42.51(b)(1), 42.5(a), OpenSky does not argue that barred the Director (a Board member) from exercising discovery authority here.

identified in the regulations, 37 C.F.R. §42.51(b)(1), and may "determine a proper course of conduct . . . for any situation not specifically covered," 37 C.F.R. §42.5(a); *e.g.*, *I.M.L. SLU v. WAG Acquisition, LLC*, IPR2016-01656, 2017 WL 6405029, at *3 (PTAB Dec. 15, 2017) (authorizing interrogatories). The Director's "interrogatories," moreover, were effectively requests for briefing. Appx31-32. One "interrogatory," for example, asked the parties to address whether "the evidence in this proceeding demonstrate[s] an abuse of process" and, "if so, which evidence and how should that evidence be weighted and addressed?" Appx31. OpenSky nowhere challenges the Director's authority to "order briefing on any issue involved in the trial." 37 C.F.R. §42.20(d).

OpenSky complains that the Director's prohibition on submitting "'[n]ew declaratory evidence'" somehow "deprived OpenSky of a fair opportunity to respond" to the Director's interrogatories about its "intent and motivations." OpenSky.Br.57-58. But OpenSky never told the Director it could not answer those questions without relying on new declarations. PTO.Br.56-57. It did not seek leave to submit such declarations "despite several opportunities to do so" before its discovery responses were due. Appx131; *see* PTO.Br.56-57. Nor did OpenSky proffer the evidence it would have submitted if further declarations had been permitted—or even tell this Court what the declarations would have said. That

makes its claim of prejudice speculative. *Cf.* Fed. R. App. P. 28(e); *Pro. Air Traffic Controllers Org. v. FLRA*, 685 F.2d 547, 587 (D.C. Cir. 1982).

OpenSky's claimed "'entitlement'" to present declarations, based on 5 U.S.C. §556(d), lacks merit. OpenSky.Br.57. Section 556(d)'s statement that a party may "present his case or defense by oral or documentary evidence," 5 U.S.C. §556(d), does not permit parties to present *any* evidence they choose, at any time, in any form they want, without regard to agency procedures and regulations. *See, e.g.*, 37 C.F.R. §42.63 (form of evidence in PTAB trials); 24 C.F.R. §5.508(i) (timeliness requirements for evidence of eligible immigration status).

OpenSky insists the Director "trapped OpenSky into noncompliance" by requiring it to produce nonexistent documents. OpenSky.Br.58. OpenSky does not describe what nonexistent documents the Director supposedly required it to produce. The failure to develop the argument forfeits it. *Killian*, 45 F.4th at 1385-86. In any event, the Director's finding that OpenSky failed to produce responsive documents was well founded: VLSI and Intel both produced communications with OpenSky, but OpenSky withheld the corresponding documents in its possession. Appx132.

OpenSky argues that the Director "lacked authority to demand a privilege log to be used to identify documents for *in camera* inspection," because that invades attorney-client privilege. OpenSky.Br.58-59. Settled law is to the contrary.

In *United States v. Zolin*, 491 U.S. 554, 568-69 (1989), the Supreme Court approved "*in camera* inspection" when deciding privilege issues, because "disclosure of allegedly privileged materials . . . for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege." *Id.* OpenSky likewise cannot refuse to provide a privilege log based on its unilateral assertion that providing the log would be "superfluous." OpenSky.Br.59.[17]

## III.    OPENSKY CANNOT EVADE THE DIRECTOR'S MODEST FEE AWARD

Having found OpenSky committed egregious misconduct, the Director was amply justified in ordering OpenSky to pay a portion of VLSI's attorney's fees. Indeed, the Director should have issued far *harsher* sanctions. *See* pp. 7-13, *supra*.

### A.    The Director Was Authorized To Award a Sanction of Attorney's Fees

The Director has express statutory authority to issue rules "prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the

---

[17] OpenSky insisted below that, under *In re Qwest Communications International Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006), courts "find waiver of the attorney-client and work product privilege when a party discloses privileged documents to a federal agency." Appx1584; *see* OpenSky.Br.59 (referring to, though not citing, that "case law"). In *Qwest*, the party claiming privilege had produced documents in response to an agency subpoena, not for *in camera* privilege review. 450 F.3d at 1181-82. *Qwest* did not hold that producing materials for *in camera* review to determine privilege somehow waives privilege.

proceeding." 35 U.S.C. § 316(a)(6).  Pursuant to that authority, the PTO promul-

gated 37 C.F.R. § 42.12, which lists "attorney fees" as available "sanction[s]."  *Id.*

§ 42.12(b)(6).  That regulation "allows the Board to impose sanctions *including*

*'attorney fees'* against a party for misconduct."  *Amneal Pharms. LLC v. Almirall,*

*LLC*, 960 F.3d 1368, 1372 n.* (Fed. Cir. 2020) (emphasis added).

    1.    Section 42.12 is within the Director's statutory authority.  When

Congress authorized the Director to prescribe "sanctions," it understood

"sanctions" to encompass attorney's fees awards.  A House Report noted that a

near-identical provision in an AIA predecessor bill would have allowed the

Director "wide discretion to protect the integrity of the process," including

"sanctions *in the form of monetary fines (or payments to other parties)*."  H.R.

Rep. No. 110-314, at 73 (2007) (emphasis added); *see* Joe Matal, *A Guide to the*

*Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. Bar J.

539, 621 (2012).  The ordinary meaning of "sanction," moreover, is "[a] penalty or

coercive measure that results from failure to comply with a law, rule, or order,"

including "'assessment of expenses and *attorney's fees*.'"  *Sanction*, *Black's Law*

*Dictionary* (9th ed. 2009) (quoting 8A Wright & Miller, *Federal Practice and*

*Procedure* § 2281 (2d ed. 1994)) (emphasis added).

    Before the AIA, the PTO interpreted its authority to "'establish regulations

. . . for the conduct of proceedings'" as authorizing "compensatory attorney fees"

as a "sanction" for misconduct. *Patent Appeal and Interference Practice*, 60 Fed. Reg. 14488, 14494-95 (Mar. 17, 1995) (citing 35 U.S.C. §6(a) (1988); then-37 C.F.R. §1.616(a)(5)).[18]   Congress is "presumed to have had knowledge" of that interpretation. *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978).  It is hard to read the AIA—which expressly authorizes "sanctions," 35 U.S.C. §316(a)(6)—as *withdrawing* that authority.

2.   OpenSky's contrary arguments confuse awarding attorney's fees as a *sanction* for misconduct with shifting litigation costs *absent* misconduct.  OpenSky cites the so-called "American Rule," which provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); OpenSky.Br.20-23.  The Supreme Court has required Congress "to make specific and explicit provisions for the allowance of attorneys' fees" to shift ordinary litigation costs. *Alyeska*, 421 U.S. at 260.  But the Court has also explained that awarding fees for misconduct "do[es] *not* constitute the kind of fee shifting" that implicates that rule, as such sanctions "are not tied to the outcome of litigation," "[n]or do sanctions shift the entire cost of litigation." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991) (emphasis added);

---

[18] OpenSky asserts that the PTO's "Final Rule discussion for §1.616" conceded that the agency "lacked statutory authority to award attorney fees." OpenSky.Br.32.  In fact, it found the opposite.  60 Fed. Reg. at 14494-95.

*see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 408-09 (1990); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52-53 (1991).

OpenSky admits that the PTO's "Rule 42.12 sanctions are not fee shifting sanctions." OpenSky.Br.46. Yet OpenSky's cases all relate to fee-shifting, not sanctions for misconduct.[19] Besides, Congress authorized "sanctions" here, and that term plainly encompasses the imposition of fee awards to redress misconduct.

3. OpenSky's remaining challenges to the Director's authority fail. OpenSky suggests the Director exceeded her authority under 37 C.F.R. §42.12 by awarding "punitive" rather than "compensatory" sanctions. OpenSky.Br.35; *see* 37 C.F.R. §42.12(b)(6) (sanctions may include "compensatory expenses, including attorney fees"). A sanction "counts as compensatory," however, "if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based," *i.e.*, "the legal bills that the litigation abuse occasioned." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). Here, the Director awarded compensation only for the "legal bills that [OpenSky's] abuse occasioned," Appx137-38, and characterized her award as "commensurate with the harm caused by OpenSky's abuse," Appx129. She considered each type of expense VLSI

---

[19] *See Alyseka*, 421 U.S. at 245-46; *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 30 (2019); *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126-27 (2015); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 549 (2014); *Key Tronic Corp. v. United States*, 511 U.S. 809, 818-19 (1994); *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990); *Hyatt v. Hirshfeld*, 16 F.4th 855, 862 (Fed. Cir. 2021); *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1232 (9th Cir. 2020).

sought, awarding some and not others. *See* pp. 62-63, *infra*. The award was clearly compensatory.

OpenSky also urges that the Director cannot award fees because Director Review is "effectively an 'appeal.'" OpenSky.Br.49-50 (citing *Cooter*, 496 U.S. 406-07). But Director Review is not an appeal—it reflects that the politically accountable Director has ultimate authority over all IPR proceedings. *Cf. United States v. Arthrex*, 594 U.S. 1, 25 (2021). And even if Director Review were an "appeal," *Cooter* never held that attorney-fee sanctions are categorically barred on appeal, as OpenSky suggests. OpenSky.Br.50. *Cooter* held that the Federal Rules of *Civil Procedure* do not authorize attorney's fees incurred on appeal, because the Federal Rules of *Appellate Procedure* govern appeals. 496 U.S. at 406-07. Here, 37 C.F.R. §42.12(b)(6), which expressly permits "attorney fees," applies throughout the IPR process.

## B.    The Director Found That OpenSky's Misconduct Was the But-For Cause of the Fees Awarded

OpenSky insists the Director failed to find that OpenSky's misconduct was the but-for cause of the fees the Director awarded. OpenSky.Br.45-53. From the beginning, the Director made clear she was awarding sanctions because, "*[b]ut for* OpenSky's misconduct, VLSI would not have incurred the fees necessary to address OpenSky's misconduct in the case and upon Director review." Appx137-38 (emphasis added). The Director examined billing records, sorted attorney time

into six categories of activities, and for each category, assessed what fees, if any, were due to OpenSky's misconduct.  Appx226-32; *see Goodyear*, 581 U.S. at 113.

OpenSky objects that the Director failed to "explain" the but-for connection between OpenSky's misconduct and the awarded fees.  OpenSky.Br.50-52.  But the Director found that VLSI's counsel undertook various activities as "a direct result of OpenSky's misconduct," Appx232; because they were "directly relevant to OpenSky's abuse of process," Appx229; *see* Appx228; and because they were "appropriate" and "not unreasonable" in light of OpenSky's misconduct, Appx229, Appx331.  In other words, those were activities VLSI's counsel would not have undertaken *but for* OpenSky's misconduct.  And the Director "distinguish[ed]" time spent on "the merits of th[e] proceeding," Appx139, excluding pre-institution fees based on a finding that they were "focus[ed]" on "the merits" rather than OpenSky's abuse, Appx227.  Those distinctions belie OpenSky's claim that the Director failed to apply a but-for causation standard.  OpenSky.Br.46-49.

### C. *Noerr-Pennington* Does Not Shield OpenSky from the Director's Modest Fee Award

OpenSky's invocation of the *Noerr-Pennington* doctrine, OpenSky.Br.36-45, is misplaced.  The First Amendment does not protect a right to extort—and certainly does not immunize egregious misconduct like OpenSky's from litigation sanctions.

"Under *Noerr-Pennington*, a person's act of petitioning the government is presumptively shielded from *liability* by the First Amendment against certain types

of claims." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (emphasis added). Nothing in that doctrine undermines "the validity of common litigation sanctions," such as sanctions for misconduct. *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 537 (2002). Following *BE & K*, the courts of appeals have recognized that *Noerr-Pennington* "does not shield a party from sanctions" for litigation misconduct. *Mohammed v. Anderson*, 833 F. App'x 651, 655 (7th Cir. 2020); *see also Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 274 (5th Cir.) ("'[T]here is no First Amendment exception to a Rule 11 violation.'"), *cert. denied sub nom. Mire v. Univ. Hosp. & Clinics, Inc.*, 144 S. Ct. 2608 (2024); *King v. Fleming*, 899 F.3d 1140, 1151 n.17 (10th Cir. 2018) (similar).

Tellingly, OpenSky cites no case where *Noerr-Pennington* immunized a party from sanctions for litigation misconduct. Its cases all deal with civil liability.[20] But OpenSky does not face *liability* for any First-Amendment protected conduct within litigation, like a petition or engaging in settlement negotiations. It

---

[20] *BE & K*, 536 U.S. at 536-37; *Pro. Real Est. Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Abbott Laboratories v. Brennan*, 952 F.2d 1346, 1356-57 (Fed. Cir. 1991); *Indus. Models, Inc. v. SNF, Inc.*, 716 F. App'x 949, 957 (Fed. Cir. 2017); *Content Extraction*, 776 F.3d at 1349; *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 534, 539 (9th Cir. 2022); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006); *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 253-54 (3d Cir. 2001); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F.Supp.3d 691, 705 (D. Md. 2017).

was *sanctioned* for egregious misconduct throughout the IPR process: "leveraging" the IPR to "extort" VLSI and Intel; offering to covertly "sabotage" the proceeding; and willfully defying the Director's discovery orders. *Noerr-Pennington* does not shield that conduct.

*    *    *

Far from showing that OpenSky was punished too harshly, OpenSky's cross-appeal underscores the seriousness of its misconduct—and the inadequacy of the Director's response. If the Court accepts any of OpenSky's cross-appeal arguments, however, the proper course would be to vacate and remand for the Director to reconsider appropriate sanctions, up to and including termination of the IPR. *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1344 (Fed. Cir. 2024). For example, if the Director lacked authority to impose attorney's fees, her refusal to terminate the IPR would have reflected the misconception that fees remained a possible alternative sanction. *See* Appx87-88. Such a failure to "appreciate the full scope of her discretion" would itself require "remand." *Regents*, 591 U.S. at 26, 36.

## CONCLUSION

The sanctions determinations challenged in OpenSky's cross-appeal should be affirmed.

September 2, 2025

Respectfully submitted,

/s/ Jeffrey A. Lamken

Kenneth J. Weatherwax
Nathan Nobu Lowenstein
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, CA  90405
(310) 307-4500

Alan J. Heinrich
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

Babak Redjaian
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
(949) 760-0991

Jeffrey A. Lamken
    *Counsel of Record*
Lucas M. Walker
Rayiner Hashem
Caroline A. Veniero
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000
jlamken@mololamken.com

Elizabeth K. Clarke
Thomas P. Schubert
Zakary M. Kadish
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
(312) 450-6700

*Counsel for Appellant VLSI Technology LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2158, 2023-2159

**Short Case Caption:** VLSI Technology LLC v. OpenSky Industries, LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  13,988  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/02/2025

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

Save for Filing